UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| GLENN RAY and LORIS SHEPARD | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 2:18-cv-2144 |
| | ) | |
| MEMPHIS BONDING COMPANY, | ) | |
| INCORPORATED, GEORGE A. HITT, | ) | |
| TRACY VAN PITTMAN and | ) | |
| JOHN DOE (a fictitious party) | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

_____

# COMPLAINT
_____

COMES NOW Plaintiffs GLENN RAY and LORIS SHEPARD, by and through undersigned counsel, and file their Complaint for violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. ("RICO") , violations of the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), violations of the Tennessee Consumer Protection Act of 1977 (T.C.A. § 47-18-101, *et seq.*) ("TCPA"), fraud, conversion and libel/slander of title against Defendants MEMPHIS BONDING COMPANY, INCORPORATED, GEORGE A. HITT, TRACY VAN PITTMAN and JOHN DOE (a fictitious party-Defendant), stating the following:

## **PARTIES**

1.      Plaintiff Glenn Ray ("Mr. Ray") is an adult resident citizen of Memphis, Shelby County, Tennessee.

2. Plaintiff Loris Shepard ("Ms. Shepard") is an adult resident citizen of Memphis, Shelby County, Tennessee.

3. Defendant Memphis Bonding Company, Incorporated ("MBC") is a corporation organized under the laws of the State of Tennessee and doing business in Memphis, Shelby County, Tennessee, which may be served with process through an officer, managing or general agent, or other authorized agent at its principal place of business located at 279 Exchange Ave., Memphis, Tennessee 38105.

4. Defendant George A. Hitt is an adult resident citizen of Memphis, Shelby County, Tennessee, who may be served with process where he may be found. Upon information and belief, Mr. Hitt is the President and sole shareholder of MBC.

5. Defendant Tracy Van Pittman is an adult resident citizen of Memphis, Shelby County, Tennessee, who may be served with process where she may be found.

6. Defendant John Doe (a fictitious party) is an individual whose identity is currently unknown to Plaintiffs and known to the other Defendants.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction to hear this Complaint and to adjudicate Plaintiffs' RICO claims stated herein under 18 U.S.C. § 1964(c); Plaintiffs' TILA claims under 15 U.S.C. § 1640(e); and 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiffs reside in the District and a substantial part of the events giving rise to the claims stated in this Complaint occurred in this District.

**FACTUAL BACKGROUND**

9.  Glenn Ray and Loris Shepard are the owners of 1712 Rayner Street, Memphis, TN 38106 (the "Real Property"), as a result of a quit claim deed from the previous owners.  They have purposefully not obtained a mortgage or any other loan which would jeopardize their interest in the Real Property.

10.  Eddie Keller is the son of Loris Shepard.  In or about May 2015, Eddie Keller was arrested and incarcerated.  The presiding court set Mr. Keller's bail at $60,000.00.  MBC initiated contact with Loris Shepard and Glenn Ray about purchasing a bail bond for Mr. Keller's release from jail.  Ms. Shepard informed MBC that she did not have $6,000.00 to pay the ten percent premium for Mr. Keller's bond. Then, Mr. Keller contacted Ms. Shepard about paying the ten percent premium.  Ms. Shepard informed Mr. Keller that she did not have any money. Mr. Keller contacted his twin sister, Erica Shepard ("Erica"), who took $2,000.00 to MBC to pay toward the premium. MBC told Erica that real property was needed to guarantee Mr. Keller's appearance in court, and Erica called Ms. Shepard who remained reluctant to involve her home. Afterwards, MBC repeatedly contacted Ms. Shepard to encourage her to use her home to secure Mr. Keller's release from jail.

11.  Mr. Ray and Ms. Shepard drove to MBC's office at 279 Exchange Ave., Memphis, TN 38105, on a Sunday night.  When they arrived, Mr. Ray and Ms. Shepard saw three individuals working at MBC: two men and one woman. However, Mr. Ray and Ms. Shepard only spoke with one male ("Defendant John Doe").   At John Doe's insistence and with his representation that the documents only guaranteed Mr. Keller's appearance in court, Mr. Ray and Ms. Shepard signed documents that were two to three pages in length.  John Doe did not provide any copies of those documents to Mr. Ray and Ms. Shepard.  The following day, which

was a Monday, John Doe called Mr. Ray and Ms. Shepard stating that he needed them to sign additional documents.  John Doe instructed Mr. Ray and Ms. Shepard to meet him at a Shell gas station at the corner of Bellevue and South Parkway because he needed the additional paperwork signed immediately.  Mr. Ray and Ms. Shepard arrived at the Shell gas station and met only with John Doe in the parking lot.  At that time, Mr. Ray and Ms. Shepard signed only two sheets of papers.  John Doe was the only person present to witness the signing of the documents.  After signing, but without receiving a copy of what they signed, Mr. Ray and Ms. Shepard left the gas station parking lot.

      12.      On February 14, 2016, MBC filed a Deed of Trust (attached as Exhibit 1) with the Register's Office of Shelby County, Tennessee, which recorded the Deed of Trust as Instrument Number 16017925.  According to the Register's Office, the Deed of Trust arrived via U.S. Mail with a check from MBC in the amount of $79.70 for the filing fee.  The Deed of Trust is a pre-preprinted form with blanks that were filled in with the date of February 14, 2016, the name of "Ray Glenn" (which is a transposition of Mr. Ray's actual name) and Loris Shepard, both as the "first part," Memphis Bonding Company as the "Trustee" and Grantee of the Real Property, the property description of the Real Property, and a description of indebtedness to Memphis Bonding Co., Inc. in the sum of $60,000.00 "evidenced by … Collateral for Eddie Keller."  On the second page, there are signatures of "Loris Shepard" and "Glenn Ray," and a corporate acknowledgment form for "Ray Glenn" is completed with an individual acknowledgement for Loris Shepard below that.  Finally, two signatures of a notary appear along with the notary seals of "Tracy Van Pittman."  Having reviewed the document, Mr. Ray and Ms. Shepard deny that they "personally appeared" before any notary.

      13.      Eddie Keller appeared in court, and the bail bond was not forfeited.  However,

despite John Doe's prior statement that signing the documents was only to ensure Mr. Keller's court appearance, MBC did not return the collateral to Mr. Ray and Ms. Shepard. Mr. Ray and Ms. Shepard recently learned that the Deed of Trust remains as a $60,000.00 encumbrance on their Real Property.

14. After learning that the Deed of Trust exists in the public record, Mr. Ray and Ms. Shepard called MBC on or about February 1, 2018. They spoke with Defendant John Doe who informed them that they owe approximately $4,003.00 to MBC. Mr. Ray and Ms. Shepard asked John Doe why they were not notified about the balance they purportedly owed. John Doe replied, "Talk to my lawyer. It's not my job to do that."

15. A cursory search of the online records of the Office of the Register of Deeds in Shelby County, Tennessee, and even the land records of the Chancery Court of DeSoto County, Mississippi, indicates that over the past several years, MBC has been a prolific filer of Deeds of Trust identical in form to the one signed by Mr. Ray and Ms. Shepard and purportedly witnessed by Tracy Van Pittman.

16. Other lawsuits with very similar allegations have been filed in this Court in the styles of *Deirdre Knight v. Memphis Bonding Company, Incorporated*, Cause No. 2:18-cv-02112, *Robert Bailey v. Memphis Bonding Company, Incorporated*, Cause No. 2:18-cv-2115 and *Kevin Sharp v. Memphis Bonding Company, Incorporated*, Cause No. 2:18-cv-2143.

## COUNT ONE: VIOLATIONS OF RICO

17. The Plaintiffs re-aver and incorporate by reference the averments made throughout this Complaint into Count One.

18. Each of the Plaintiffs is a "person" with standing to sue within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

19. Each of the Defendants is a RICO "person" within the meaning of 18 U.S.C. § 1961(3) because each is an entity capable of holding a legal or beneficial interest in property.

20. All Defendants have associated together as an association-in-fact, and therefore an enterprise within the meaning of 18 U.S.C. § 1961(4). Such RICO Enterprise has an ongoing relationship with a common purpose of using false authentication features to file Deeds of Trust as alleged "security" on false or illegal debts and collecting money from homeowners who have lost access to the equity in their homes as a result of the fraudulently filed Deeds of Trust.

21. The RICO Enterprise is engaged in interstate commerce in that its activities and transactions relating to the arrangement of bail bond agreements, collection of bail bond fees and the practice of taking title to Real Property in both Shelby County, Tennessee, and DeSoto County, Mississippi, require movement and communications across state lines and use of interstate facilities such as the mail and wire systems used by banking industry.

22. The members of the RICO Enterprise function as a continuing unit in maintaining fraudulent security interests and collecting money based on those fraudulent security interests.

23. The RICO Enterprise consists of the following actions by MBC:

- MBC, through individual bail bonding agents like John Doe, offers to write a bail bond ("appearance bond") for a person incarcerated in Shelby County, Tennessee;
- As part of the "application" process, MBC requires a friend or relative of the person incarcerated to sign an "Indemnity Agreement" which lists the amount of the appearance bond as the total, but only potential, liability (if the incarcerated person does not appear in court after being released under the bail bond);
- MBC also requires the "indemnitors" to sign a "Promissory Note" on the amount of the potential liability if the appearance bond is forfeited and a separate

"Promissory Note" on any unpaid portion of the "Premium" which MBC is allowed to charge under Tennessee law.  If MBC can obtain signatures on the documents under false pretense, MBC has the signatures notarized out of the presence of the signers.  If MBC cannot obtain signatures on the documents, MBC simply forges the signature.  In either case, MBC refuses to provide copies of the alleged "debt" when requested and/or to any person who allegedly signed them;

- MBC requires the "indemnitor" to sign a Deed of Trust securing the entire amount of the potential liability on the appearance bond either at the same time as the "indemnitors" sign other documents, or at a later date, if the "indemnitor" owns Real Property.  MBC and its bail bonding agents inform the "indemnitor" that the Deed of Trust is only collateral to ensure the appearance in court of the incarcerated person.  The Deed of Trust even states that it is "collateral for [incarcerated person]."  The Deed of Trust is not signed in front of a notary public making the transaction seem less formal;

- MBC employs a notary public to affix a notary seal to the Deed of Trust (which is required under both Tennessee and Mississippi law to file a document securing Real Property at the recording office) after the fact of the signature;

- MBC determines the filing fee required to file the Deed of Trust with the appropriate recording office then places the Deed of Trust with a check for the filing fee in the U.S. Mail for delivery to the recording office;

- MBC's check is negotiated using the wire system employed by the United States banking system;

- After the charges against the formerly incarcerated person are resolved and liability on the appearance bond is terminated, MBC does not (as was represented) return or release the Deed of Trust. Instead, MBC simply retains a security interest in perpetuity;

- MBC does not actively attempt to collect the "debts" it has fraudulently secured, and MBC does not seek to foreclose on the Deed of Trust. The "indemnitor" usually realizes that the Deed of Trust (in the exorbitant amount of the former, potential liability on the appearance bond) exists in the public record when the "indemnitor" performs a title search in anticipation of selling the Real Property or obtaining credit using the Real Property as security. At that point, when the "indemnitor" contacts MBC, MBC informs the "indemnitor" of the "debt" but MBC refuses to provide any documentation about the "debt." Instead, MBC uses its ill-gotten leverage to extort the payment of a "loan" which is illegal under state law.

24. The RICO Enterprise described above constitutes an unlawful pattern of racketeering under 18 U.S.C. 1962. The pattern is established by several Complaints in similar form to this one which have or will be filed by the time of service of process (as evidenced by Deeds of Trust filed with the Register of Deeds of Shelby County, Instrument Numbers 16017925 and 15082272, for example). The acts of "racketeering" defined under 18 U.S.C. 1961 include extortionate credit extension, mail fraud, wire fraud, and fraud and related activity in connection with identification documents, authentication features and information. MBC commits the unlawful acts in conspiracy with its President and/or sole shareholder Hitt and agents/employees (John Doe and Tracy Van Pittman) to do the same. The Defendants pose a

continuous threat of engaging in those racketeering acts because the Deeds of Trust remain permanent liens on Plaintiffs' and other person's Real Property.

25. Those practices are a regular way of conducting the ongoing business of each Defendant and of conducting or participating in the ongoing enterprise.

26. On Plaintiffs' RICO claim against all Defendants, Plaintiffs seek statutory and/or actual damages of not less than $100,000.00, costs and attorney's fees.

## COUNT TWO: VIOLATIONS OF TILA

27. Plaintiffs re-aver and incorporate by reference the averments made throughout this Complaint into Count Two, which is pleaded additionally and alternatively because Defendant failed to provide Mr. Ray and Ms. Shepard copies of any documents they allegedly signed and in the event Defendant MBC produces any evidence of underlying debt, and for Count Two, Plaintiffs allege violations of TILA against Defendant MBC.

28. Plaintiffs aver that any agreement to defer payment of the 10% premium and other fees associated with a bail bond constitutes consumer credit extended for a personal or family purpose within the meaning of TILA, 15 U.S.C. § 1602(g) and (i), and Regulation Z, 12 C.F.R. § 1026.2(a)(12).

29. MBC regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the entity to which the transaction which is the subject of this action is initially payable, making MBC a creditor within the meaning of TILA, 15 U.S.C. § 1602(g) and Regulation Z, 12 C.F.R. § 1026.2(a)(17).

30. MBC violated the requirements of TILA and Regulation Z by failing to provide any disclosures of the debt now claimed and in the following and other respects:

a. By failing to provide the required disclosures clearly and conspicuously in writing, segregated from everything else and in a form which the Plaintiffs could keep: any finance charge, the amount financed, a separate itemization of the amount financed, the payment schedule, and a statement that the consumer should refer to the appropriate contract document for information about nonpayment, default, the right to accelerate the maturity of the obligation and prepayment rebates and penalties, in violation of 15 U.S.C. § 1638(b) and Regulation Z, 12 C.F.R. § 1026.17;

b. By failing to provide a statement that a security interest has been taken in (A) the property which is purchased as a part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type, as required by 15 U.S.C. § 1638(a)(9);

c. By failing to provide a statement in the case of a consumer credit transaction that is secured by the principal dwelling of the consumer, in which the extension of credit may exceed the fair market value of the dwelling, a clear and conspicuous statement that (A) the interest on the portion of the credit extension that is greater than the fair market value of the dwelling is not tax deductible for the Federal income tax purposes; and (B) the consumer should consult a tax adviser for further information regarding the deductibility of interest and charges;

d. By failing to provide the number, amounts, and timing of payments scheduled to repay the obligation, in violation of 15 U.S.C. § 1638(a)(6) and Regulation Z, 12 C.F.R. § 1026.18(g).

31. On Plaintiffs' TILA claims against Defendant MBC, Plaintiffs seek statutory

and/or actual damages and, alternatively, rescission of the credit agreement(s) allegedly secured by the Deed of Trust. Plaintiffs also seek all costs and attorney's fees.

### COUNT THREE: VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT of 1977 (T.C.A. § 47-18-101, *et seq.*)

32. Plaintiffs re-aver and incorporate by reference the averments made throughout this Complaint into Count Three, which is pleaded additionally and alternatively, and for Count Three, Plaintiffs allege that Defendant MBC violated the TCPA.

33. Plaintiffs allege that Defendant MBC violated the TCPA by engaging in unfair and deceptive acts and practices in the course of selling their services to the Plaintiffs.

34. Defendant MBC is a "person" as defined by the Tennessee Consumer Protection Act, T.C.A. §47-18-103(9).

35. MBC violated the TCPA, specifically T.C.A. § 47-18-104(a) by employing unfair or deceptive acts affecting the conduct of trade or commerce. The unfair or deceptive acts include representing that Plaintiffs only signed documents to ensure Mr. Keller's appearance in court, and not for any underlying obligation to repay a loan or other extension of credit. Further, pursuant to Tennessee law, any bail bondsman who accepts collateral for a bail bond must return that collateral when liability on the bond is terminated. MBC's practice of obtaining a Deed of Trust and alleging that it is security for otherwise unsecured notes specifically violates T.C.A. § 47-18-104(b)(12) which declares "representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law" an unlawful unfair or deceptive practice.

36. As a result of MBC's violation of the TCPA, it is liable to Plaintiffs for all actual damages not less than $100,000.00, as well as attorney's fees and costs pursuant to TCPA, T.C.A. § 47-18-109(e)(1).

37.     In addition, to the extent that Defendant's violations were intentional (as opposed to merely negligent), the actual damages to Plaintiffs should be trebled pursuant to the TCPA, T.C.A. § 47-18-109(a)(3).

## COUNT FOUR: FRAUD

38.     Plaintiffs re-aver and incorporate by reference the averments made throughout this Complaint into Count Four, which is pleaded additionally and alternatively, and for Count Four, Plaintiffs allege that Defendants MBC, Hitt, Pittman and Doe committed fraud individually and as part of a civil conspiracy.

39.     Defendants individually and as part of a conspiracy made material representations of fact to Plaintiffs Glenn Ray and Loris Shepard.  First, MBC and its President/owner Hitt employed its agents/employees to make the representation that by signing documents, Mr. Ray and Ms. Shepard were only securing the appearance of Ms. Shepard's son Eddie Keller in court and not pledging security for any underlying debt.  Those representations were made in person and in the Deed of Trust (which is silent as to any underlying debt).  Defendant Tracy Van Pittman made a material misrepresentation that she witnessed the signing of the Deed of Trust when she was not even present with Mr. Ray and Ms. Shepard and John Doe.  The false representations, taken separately and as a whole in furtherance of their conspiracy, were relied upon by Mr. Ray and Ms. Shepard.  Although Mr. Ray and Ms. Shepard signed the Deed of Trust which was filed, they were encouraged to sign "documents" under misrepresentations made to them and were unaware that the "documents" included a Deed of Trust.  To this date, Mr. Ray and Ms. Shepard's house remains encumbered to the extent of $60,000.00 even though MBC itself claims that they owe approximately $4,003.00.  Defendant Tracy Van Pittman has continued the conspiracy in attempting to collect the fraudulent debt through the filing of the

falsely authenticated Deed of Trust.  This fraudulent scheme has caused Mr. Ray and Ms. Shepard damages in the loss of access to credit on the equity in their home.

40. On Plaintiffs' fraud claim, Plaintiff seeks the damages for the full value of their lost property not less than $100,000.00 and punitive damages against all Defendants jointly and severally.

## COUNT FIVE: CONVERSION

41. Plaintiffs re-aver and incorporate by reference the averments made throughout this Complaint into Count Five, which is pleaded additionally and alternatively, and for Count Five, Plaintiffs allege that Defendants MBC, Hitt, Pittman and Doe committed conversion of Plaintiffs' property, individually and as part of a civil conspiracy.

42. Defendants' scheme outlined throughout this Complaint served to deprive Mr. Ray and Ms. Shepard of the title to and enjoyment of their Real Property.  Defendants' actions were intentional, willful and done with malice.

43. As a result of the conversion, Mr. Ray and Ms. Shepard seeks damages for the full value of their Real Property not less than $100,000 and punitive damages against all Defendants jointly and severally.

## COUNT SIX: LIBEL/SLANDER OF TITLE

44. Plaintiffs re-aver and incorporate by reference the averments made throughout this Complaint into Count Six, which is pleaded additionally and alternatively, and for Count Six, Plaintiffs allege that Defendants MBC, Hitt, Pittman and Doe committed libel/slander of title, individually and as part of a civil conspiracy.

45. Defendants MBC, Hitt, Pittman and Doe committed libel/slander of title by publishing and filing in the public record false statements about the state of the title to Plaintiffs'

Real Property. Specifically, Defendants stated that Plaintiffs granted title to their Real Property in Trust to MBC and that Plaintiffs are indebted to MBC in the sum of $60,000. Those statements are false, and by publishing and filing false statements, Defendants have caused Plaintiffs damages in the form of loss of access to credit and loss of the equity in their Real Property.

46.     On Count Six, Plaintiffs seek damages for the full value of their Real Property not less than $100,000, all costs (including attorneys' fees) to restore the title to its proper state and punitive damages against all Defendants jointly and severally.

**WHEREFORE**, Plaintiffs respectfully pray that this Court:

1. On Count One, award Plaintiffs actual and/or statutory damages not less than $100,000.00, costs, attorneys' fees and any other relief (including equitable relief) available under RICO against all Defendants;

2. On Count Two, award Plaintiffs actual and/or statutory damages, costs, attorneys' fees and any other relief (including equitable relief) available under TILA against Defendant MBC;

3. On Count Three, award Plaintiffs actual and/or statutory damages not less than $100,000.00 (plus treble damages), costs, attorneys' fees and any other relief available under TCPA against Defendant MBC;

4. On Count Four, award Plaintiffs actual damages not less than $100,000.00 and punitive damages against all Defendants jointly and severally for fraud;

5. On Count Five, award Plaintiffs actual damages not less than $100,000.00 and punitive damages against Defendants jointly and severally for conversion;

6. On Count Six, award Plaintiffs actual damages not less than $100,000.00, all costs

       (including attorneys' fees) to restore the title to their Real Property and punitive damages against Defendants jointly and severally for libel/slander of title; and

7. Award any other additional relief to which Plaintiffs may be entitled at law or equity.

Submitted this 1st day of March, 2018.

                               RESPECTFULLY SUBMITTED,

                               s/ Matthew F. Jones
                               Matthew F. Jones (MS 100430, TN BPR # 25825)
                               MEMPHIS AREA LEGAL SERVICES, INC.
                               22 N. Front Street, 11th Floor
                               Memphis, TN 38103
                               (901) 523-8822
                               (901) 255-3429 (direct)
                               (901) 843-2929 (fax)
                               mjones@malsi.org