UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| GLENN RAY and LORIS SHEPARD ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No.: 2:18-cv-2144 |
| ) | |
| MEMPHIS BONDING COMPANY, ) | |
| INCORPORATED, GEORGE A. HITT, ) | |
| TRACY VAN PITTMAN and ) | |
| SAM HAWKINS ) | |
| ) | |
| Defendants ) | |
| ) | |

_____

**SECOND AMENDED COMPLAINT**
_____

COMES NOW Plaintiffs GLENN RAY and LORIS SHEPARD, by and through undersigned counsel, and with leave of court file their Second Amended Complaint against Defendants MEMPHIS BONDING COMPANY, INCORPORATED, GEORGE A. HITT, TRACY VAN PITTMAN and SAM HAWKINS, jointly and separately as indicated below, for violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO") , violations of the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), violations of the Tennessee Consumer Protection Act of 1977, T.C.A. § 47-18-101, *et seq.* ("TCPA"), fraud, professional negligence/malpractice and libel/slander of title/removal of cloud on title, stating the following:

## **PARTIES**

1. Plaintiff Glenn Ray ("Mr. Ray") is an adult resident citizen of Memphis, Shelby

County, Tennessee.

2. Plaintiff Loris Shepard ("Ms. Shepard") is an adult resident citizen of Memphis, Shelby County, Tennessee.

3. Defendant Memphis Bonding Company, Incorporated ("MBC") is a corporation organized under the laws of the State of Tennessee and doing business in Memphis, Shelby County, Tennessee. MBC has appeared in this cause.

4. Defendant George A. Hitt is an adult resident citizen of Memphis, Shelby County, Tennessee. Upon information and belief, Mr. Hitt is the President and sole shareholder of MBC. Mr. Hitt has appeared in this cause.

5. Defendant Tracy Van Pittman is an adult resident citizen of Memphis, Shelby County, Tennessee. Mr. Pittman has appeared in this cause.

6. Defendant Sam Hawkins is an adult resident citizen of West Memphis, Crittendon County, Arkansas who may be served at his residence 523 Lois Marie Cove, West Memphis, AR 72301, or wherever he may be found.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction to hear this Complaint and to adjudicate Plaintiffs' RICO claims stated herein under 18 U.S.C. § 1964(c); Plaintiffs' TILA claims under 15 U.S.C. § 1640(e); and 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiffs reside in the District and a substantial part of the events giving rise to the claims stated in this Complaint occurred in this District.

## FACTUAL BACKGROUND

9.     Glenn Ray and Loris Shepard are the owners of 1712 Rayner Street, Memphis, TN 38106 (the "Real Property"), as a result of a quit claim deed from the previous owners. They have purposefully not obtained a mortgage or any other loan which would jeopardize their interest in the Real Property.

10.     Eddie Keller is the son of Loris Shepard. In or about May 2015, Eddie Keller was arrested and incarcerated. The presiding court set Mr. Keller's bail at $60,000.00. MBC initiated contact with Loris Shepard and Glenn Ray about purchasing a bail bond for Mr. Keller's release from jail. Ms. Shepard informed MBC that she did not have $6,000.00 to pay the ten percent premium for Mr. Keller's bond. Then, Mr. Keller contacted Ms. Shepard about paying the ten percent premium. Ms. Shepard informed Mr. Keller that she did not have any money. Mr. Keller contacted his twin sister, Erica Shepard ("Erica"), who took $2,000.00 to MBC to pay toward the premium. MBC told Erica that real property was needed to guarantee Mr. Keller's appearance in court, and Erica called Ms. Shepard who remained reluctant to involve her home. Afterwards, MBC repeatedly contacted Ms. Shepard to encourage her to use her home to secure Mr. Keller's release from jail.

11.     Mr. Ray and Ms. Shepard drove to MBC's office at 279 Exchange Ave., Memphis, TN 38105, on a Sunday night. When they arrived, Mr. Ray and Ms. Shepard saw three individuals working at MBC: two men and one woman. However, Mr. Ray and Ms. Shepard only spoke with one male, who has been identified by MBC as Sam Hawkins. At Sam Hawkins's insistence and with his representation that the documents only guaranteed Mr. Keller's appearance in court, Mr. Ray and Ms. Shepard signed documents that were two to three pages in length. Sam Hawkins did not provide any copies of those documents to Mr. Ray and

3

Ms. Shepard. The following day, which was a Monday, Sam Hawkins called Mr. Ray and Ms. Shepard stating that he needed them to sign additional documents. Sam Hawkins instructed Mr. Ray and Ms. Shepard to meet him at a gas station at the corner of Bellevue and South Parkway because he needed the additional paperwork signed immediately. Mr. Ray and Ms. Shepard arrived at the gas station and met only with Sam Hawkins in the parking lot. At that time, Mr. Ray and Ms. Shepard signed only two sheets of papers. Sam Hawkins was the only person present to witness the signing of the documents. After signing, but without receiving a copy of what they signed, Mr. Ray and Ms. Shepard left the gas station parking lot.

      12.      On February 14, 2016, MBC filed a Deed of Trust (attached as Exhibit 1) with the Register's Office of Shelby County, Tennessee, which recorded the Deed of Trust as Instrument Number 16017925. According to the Register's Office, the Deed of Trust arrived via U.S. Mail with a check from MBC in the amount of $79.70 for the filing fee. The Deed of Trust is a pre-preprinted form with blanks that were filled in with the date of February 14, 2016, the name of "Ray Glenn" (which is a transposition of Mr. Ray's actual name) and Loris Shepard, both as the "first part," Memphis Bonding Company as the "Trustee" and Grantee of the Real Property, the property description of the Real Property, and a description of indebtedness to Memphis Bonding Co., Inc. in the sum of $60,000.00 "evidenced by … Collateral for Eddie Keller." On the second page, there are signatures of "Loris Shepard" and "Glenn Ray," and a corporate acknowledgment form for "Ray Glenn" is completed with an individual acknowledgement for Loris Shepard below that. Finally, two signatures of a notary appear along with the notary seals of "Tracy Van Pittman." Having reviewed the document, Mr. Ray and Ms. Shepard deny that they "personally appeared" before any notary.

      13.      Eddie Keller appeared in court, and the bail bond was not forfeited. However,

4

despite Sam Hawkins's prior statement that signing the documents was only to ensure Mr. Keller's court appearance, MBC did not return the collateral to Mr. Ray and Ms. Shepard. Mr. Ray and Ms. Shepard recently learned that the Deed of Trust remains as a $60,000.00 encumbrance on their Real Property.

14. After learning that the Deed of Trust exists in the public record, Mr. Ray and Ms. Shepard called MBC on or about February 1, 2018. They spoke with Defendant Sam Hawkins who informed them that they owe approximately $4,003.00 to MBC. Mr. Ray and Ms. Shepard asked Sam Hawkins why they were not notified about the balance they purportedly owed. Sam Hawkins replied, "Talk to my lawyer. It's not my job to do that."

15. MBC's apparent practice of taking a Deed of Trust, not merely as indemnity in the event that a bail bond is forfeited, but as on-going, indefinite security for the repayment of unpaid bond premiums, interests, fees or other costs, is contrary to Tennessee law. Under T.C.A. § 40-11-126(8), a professional bail bondsman cannot:

> accept anything of value from a principal except the premium; provided, that the bondsman shall be permitted to accept collateral security or other indemnity from the principal ***which shall be returned upon final termination of liability on the bond***. The collateral security or other indemnity required by the bondsman must be reasonable in relation to the amount of the bond. When a bail bondsman accepts collateral, the bondsman shall give a written receipt for the collateral, and this receipt shall give in detail a full description of the collateral received and the terms of redemption;

(Emphasis added).

16. A cursory search of the online records of the Office of the Register of Deeds in Shelby County, Tennessee, and even the land records of the Chancery Court of DeSoto County, Mississippi, indicates that over the past several years, MBC has been a prolific filer of Deeds of Trust identical in form to the one signed by Mr. Ray and Ms. Shepard and purportedly witnessed

5

by Tracy Van Pittman. In fact, Mr. Hitt has often named himself as the trustee or grantee of Real Property in several deeds related to bail bonds. As such, Mr. Hitt is clearly personally aware of the regular activity of MBC in filing Deeds of Trust. All deeds of trust filed in Tennessee and Mississippi were filed through the use of the mail.

17. Other lawsuits with very similar allegations have been filed in this Court in the styles of *Deirdre Knight v. Memphis Bonding Company, Incorporated*, Cause No. 2:18-cv-02112, *Robert Bailey v. Memphis Bonding Company, Incorporated*, Cause No. 2:18-cv-2115 and *Kevin Sharp v. Memphis Bonding Company, Incorporated*, Cause No. 2:18-cv-2143.

## COUNT ONE: VIOLATIONS OF RICO

18. The Plaintiffs re-aver and incorporate by reference the averments made throughout this Complaint into Count One.

19. Each of the Plaintiffs is a "person" with standing to sue within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

20. MBC is a RICO "person" within the meaning of 18 U.S.C. § 1961(3) because it is an entity capable of holding a legal or beneficial interest in property, as evidenced by the Deed of Trust, in which MBC claims both an ownership and beneficial interest. The remaining Defendants are individuals which qualify as a "person" under 18 U.S.C. § 1961(3).

21. MBC is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) as it is a corporation formed under the laws of the State of Tennessee. MBC's legitimate business is operating a bail bonding company under the laws of the State of Tennessee, employing "professional bail bondsmen" to write appearance bonds in criminal courts as regulated by the appropriate criminal courts and licensed by State of Tennessee.

22. The RICO Enterprise is engaged in interstate commerce in that its activities and

transactions relating to the arrangement of bail bond agreements, collection of bail bond fees and the practice of taking title to Real Property as collateral for possible indemnity on bail bonds in both Shelby County, Tennessee, and DeSoto County, Mississippi, requires movement and communications across state lines and the use of interstate facilities, particularly the mail.

23.     Defendants MBC, Hitt, Pittman and Hawkins are either employed by or associated with the RICO Enterprise and have knowingly and intentionally engaged in the conduct of MBC's legitimate business (of writing criminal appearance bail bonds) through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).  The pattern of racketeering consists of a fraudulent scheme by MBC, Hitt, Pittman and Hawkins to obtain title to the Real Property of its customers by falsely representing that the collateral provided by the customers will be returned (as required by Tennessee law) when the criminal charges against the criminal defendant are resolved.  By making that false representation, customers either sign documents which are blank or not fully completed, or customers provide enough information to the Defendants to create a Deed of Trust which is later signed and notarized, allowing MBC to file a seemingly executed and notarized Deed of Trust with the appropriate office for recording such Deeds.  The scheme to obtain the Deed of Trust fully anticipates the use of the mail because the recording office accepts instruments by mail.  MBC has actually used the mail (in all cases which have been discovered, including Plaintiffs' case) to send the falsified Deed of Trust to the recording office.  In Mr. Ray's and Ms. Shepard's case, the mailing was completed either on or immediately before the filing date of the Deed of Trust, which is February 14, 2016.

24.     Each Defendant had his/her particular role in carrying out the scheme set out above.  Mr. Hitt, who is the sole shareholder of MBC, concocted the scheme to use Deeds of Trust to extract money out of unsuspecting customers who thought they would have no monetary

7

obligation to MBC.  Mr. Hitt's primary involvement is evidenced by his own prolific filing of Deeds of Trust naming himself as the grantee or trustee of Deeds related to bail bonds written by MBC.  Mr. Pittman, who claims to be the Director of Risk Management for MBC, is effectively the manager of MBC who operates MBC on a daily basis and approves the activities of the independent bail bond agents who write bail bonds and obtain documents from customers.  Sam Hawkins is the independent bail bonding agent who interacted with Mr. Ray and Ms. Shepard, made the false representation that they would not owe any money or have any obligation to MBC if Mr. Keller showed up in court.  Sam Hawkins obtained Mr. Ray's and Ms. Shepard's signatures on the Deed of Trust with full knowledge and intent that he would do whatever it took to get the Deed of Trust recorded, even though it was not notarized when Mr. Ray and Ms. Shepard purportedly signed it.  Finally, Sam Hawkins presented the Deed of Trust (after it had been fully completed) to Mr. Pittman, who was acting as an official of the State of Tennessee, when he falsely notarized the signatures on the Deed of Trust which he did not witness because Mr. Ray and Ms. Shepard did not "personally appear" before Mr. Pittman.  Each of these actors acted intentionally to wrongfully obtain a Deed of Trust from Mr. Ray and Ms. Shepard which each Defendant knew would be mailed to the Register of Deeds and recorded as a lien on Mr. Ray's and Ms. Shepard's property.  By obtaining the lien under false and fraudulent circumstances, MBC would later use that lien as leverage to demand payment from Mr. Ray and Ms. Shepard on money they do not owe.  The independent actions of all the Defendants taken in furtherance of the fraudulent scheme have caused Mr. Ray and Ms. Shepard damages in the form of lost access to the equity in their home.

     25.     The actions set out above constitute a violation of 18 U.S.C. § 1341 (mail fraud), which forms the basis of the pattern of racketeering activity as defined in 18 U.S.C. § 1961(a)

and is, therefore, a violation 18 U.S.C. § 1962(c).

26. Further, the actions set out above constitute a violation of 18 U.S.C. § 1962(b) in that the "debt" which MBC has attempted to collect from Mr. Ray and Ms. Shepard is an "unlawful debt" within the meaning of 18 U.S.C. § 1961(6). The debt is "unlawful" because it is unenforceable under Tennessee law because of the laws relating to usury. Specifically, T.C.A. § 47-14-117 prohibits the collection of "usury or excessive charges" in contracts of debt, and T.C.A. § 47-14-103 sets the collectible rate of interest for debts under Tennessee law in general and under all other statutes which fix a maximum effective rate for particular categories of creditors, lenders, or transactions. Under the statutes related to "professional bail bondsmen," it is specifically prohibited for "professional bail bondsmen" to charge any interest. T.C.A. § 40-11-126(8). MBC claims that Mr. Ray and Ms. Shepard owe a debt (which, if such a debt appears on the same form as other customers have produced) includes interest. Therefore, the Defendants' concerted actions to "create" a debt with interest related to a bail bond is a violation of Tennessee's laws related to usury.

27. Finally, each of the Defendants knowingly and intentionally engaged in a conspiracy to violate both 18 U.S.C. § 1962(b) and (c), in violation of 18 U.S.C. § 1962(d). The conspiracy involved the agreement of each Defendant to take the independent actions set out above with the agreed upon purpose to obtain a lien on Mr. Ray's and Ms. Shepard's Real Property. Mr. Hitt, as the owner of MBC, concocted the scheme which was carried out by MBC's office manager Mr. Pittman, who oversaw the activities of the independent bail bond agent Sam Hawkins. Sam Hawkins obtained and/or created documents related to Mr. Ray and Ms. Shepard under false promises that they would not owe any money, and Sam Hawkins approached Mr. Pittman to "legitimize" the Deed of Trust with the Seal of the State of

9

Tennessee, although Mr. Pittman knew he did not witness Mr. Ray or Ms. Shepard sign the document (in the parking lot of a gas station).  Further evidence that Mr. Pittman did not appropriately notarize the Deed of Trust is the fact that Mr. Ray's name is transposed on the document, reading "Ray Glenn."  The conspiracy among the Defendants had a distinct purpose: to obtain money from Mr. Ray and Ms. Shepard when none was owed.  Each Defendant had a pecuniary interest in taking their independent actions in furtherance of the scheme: Mr. Hitt would make money as the sole shareholder of MBC; Mr. Pittman would make money as the office manager; and Sam Hawkins earned commissions on the collection of money from MBC's customers.  Of course, any money collected flows through the otherwise legitimate business of MBC.

28. The scheme which the Defendants perpetrated on Mr. Ray and Ms. Shepard is a pattern which appears in other cases of MBC's customers, including cases already filed in this Court (as mentioned above).

29. Those practices are a regular way of conducting the ongoing business of each Defendant and of conducting or participating in the ongoing enterprise through a pattern of racketeering.

30. On Plaintiffs' RICO claim against all Defendants, Plaintiffs seek statutory and/or actual damages of not less than $100,000.00, costs and attorney's fees.

## COUNT TWO: VIOLATIONS OF TILA

31. Plaintiffs re-aver and incorporate by reference the averments made throughout this Complaint into Count Two, which is pleaded additionally and alternatively because Defendant failed to provide Mr. Ray and Ms. Shepard copies of any documents they allegedly signed and in the event Defendant MBC produces any evidence of underlying debt, and for

Count Two, Plaintiffs allege violations of TILA against Defendant MBC.

32. Plaintiffs aver that any agreement to defer payment of the 10% premium and other fees associated with a bail bond constitutes consumer credit extended for a personal or family purpose within the meaning of TILA, 15 U.S.C. § 1602(g) and (i), and Regulation Z, 12 C.F.R. § 1026.2(a)(12).

33. MBC regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the entity to which the transaction which is the subject of this action is initially payable, making MBC a creditor within the meaning of TILA, 15 U.S.C. § 1602(g) and Regulation Z, 12 C.F.R. § 1026.2(a)(17).

34. MBC violated the requirements of TILA and Regulation Z by failing to provide any disclosures of the debt now claimed and in the following and other respects:

   a. By failing to provide the required disclosures clearly and conspicuously in writing, segregated from everything else and in a form which the Plaintiffs could keep: any finance charge, the amount financed, a separate itemization of the amount financed, the payment schedule, and a statement that the consumer should refer to the appropriate contract document for information about nonpayment, default, the right to accelerate the maturity of the obligation and prepayment rebates and penalties, in violation of 15 U.S.C. § 1638(b) and Regulation Z, 12 C.F.R. § 1026.17;

   b. By failing to provide a statement that a security interest has been taken in (A) the property which is purchased as a part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type, as required

   by 15 U.S.C. § 1638(a)(9);

  c. By failing to provide a statement in the case of a consumer credit transaction that is secured by the principal dwelling of the consumer, in which the extension of credit may exceed the fair market value of the dwelling, a clear and conspicuous statement that (A) the interest on the portion of the credit extension that is greater than the fair market value of the dwelling is not tax deductible for the Federal income tax purposes; and (B) the consumer should consult a tax adviser for further information regarding the deductibility of interest and charges;

  d. By failing to provide the number, amounts, and timing of payments scheduled to repay the obligation, in violation of 15 U.S.C. § 1638(a)(6) and Regulation Z, 12 C.F.R. § 1026.18(g); and

  e. By failing to provide the disclosure of the right to rescission of a consumer credit transaction which is secured by the obligor's principal dwelling under 15 U.S.C. § 1635 (for which Plaintiffs exercise their right of rescission).

35. On Plaintiffs' TILA claims against Defendant MBC, Plaintiffs seek statutory and/or actual damages and, alternatively, rescission of the credit agreement(s) allegedly secured by the Deed of Trust. Plaintiffs also seek all costs and attorney's fees.

### COUNT THREE: VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT of 1977 (T.C.A. § 47-18-101, *et seq.*)

36. Plaintiffs re-aver and incorporate by reference the averments made throughout this Complaint into Count Three, which is pleaded additionally and alternatively, and for Count Three, Plaintiffs allege that Defendant MBC violated the TCPA.

37. Plaintiffs allege that Defendant MBC violated the TCPA by engaging in unfair and deceptive acts and practices in the course of selling their services to the Plaintiffs.

12

38.     Defendant MBC is a "person" as defined by the Tennessee Consumer Protection Act, T.C.A. § 47-18-103(9).

39.     MBC violated the TCPA, specifically T.C.A. § 47-18-104(a) by employing unfair or deceptive acts affecting the conduct of trade or commerce. The unfair or deceptive acts include representing that Plaintiffs only signed documents to ensure Mr. Keller's appearance in court, and not for any underlying obligation to repay a loan or other extension of credit. Further, pursuant to Tennessee law, any bail bondsman who accepts collateral for a bail bond must return that collateral when liability on the bond is terminated. MBC's practice of obtaining a Deed of Trust and alleging that it is security for a debt (and not just security for a potential claim of indemnity if a bail bond is forfeited) violates the TCPA. Specifically, T.C.A. § 47-18-104(b)(12) declares "representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law" an unlawful unfair or deceptive practice. By claiming that the Deed of Trust in this case is security for an unpaid portion of the bail bond premium, when such a transaction is prohibited by Tennessee law, MBC has falsely represented that it has rights which it does not and cannot have and that Mr. Ray and Ms. Shepard have an obligation which they do not have.

40.     As a result of MBC's violation of the TCPA, it is liable to Plaintiffs for all actual damages not less than $100,000.00, as well as attorney's fees and costs pursuant to TCPA, T.C.A. § 47-18-109(e)(1).

41.     In addition, to the extent that Defendant's violations were intentional (as opposed to merely negligent), the actual damages to Plaintiffs should be trebled pursuant to the TCPA, T.C.A. § 47-18-109(a)(3).

## COUNT FOUR: FRAUD

42. Plaintiffs re-aver and incorporate by reference the averments made throughout this Complaint into Count Four, which is pleaded additionally and alternatively, and for Count Four, Plaintiffs allege that Defendants MBC, Hitt, Pittman and Hawkins committed fraud individually and as part of a civil conspiracy.

43. Defendants individually and as part of a conspiracy made material representations of fact to Plaintiffs Glenn Ray and Loris Shepard. First, MBC and its President/owner Hitt employed its agents/employees to make the representation that by signing documents, Mr. Ray and Ms. Shepard were only securing the appearance of Ms. Shepard's son Eddie Keller in court and not pledging security for any underlying debt. Those representations were made in person and in the Deed of Trust (which is silent as to any underlying debt). Defendant Tracy Van Pittman made a material misrepresentation that he witnessed the signing of the Deed of Trust when he was not even present with Mr. Ray and Ms. Shepard and Sam Hawkins. The false representations, taken separately and as a whole in furtherance of their conspiracy, were relied upon by Mr. Ray and Ms. Shepard. Although Mr. Ray and Ms. Shepard may have signed the Deed of Trust which was filed, they were encouraged to sign "documents" under misrepresentations made to them and were unaware that the "documents" included a Deed of Trust. To this date, Mr. Ray and Ms. Shepard's house remains encumbered to the extent of $60,000.00 even though MBC itself claims that they owe approximately $4,003.00. Defendant Tracy Van Pittman has continued the conspiracy in attempting to collect the fraudulent debt through the filing of the falsely authenticated Deed of Trust. This fraudulent scheme has caused Mr. Ray and Ms. Shepard damages in the loss of access to credit on the equity in their home.

44.     On Plaintiffs' fraud claim, Plaintiff seeks the damages for the full value of their lost property not less than $100,000.00 and punitive damages against all Defendants jointly and severally.

## COUNT FIVE: PROFESSIONAL NEGLIGENCE/MALPRACTICE

45.     Plaintiffs re-aver and incorporate by reference the averments made throughout this Complaint into Count Five, which is pleaded additionally and alternatively, and for Count Five, Plaintiffs allege that Defendant Pittman committed an act of professional negligence/malpractice when he notarized the Deed of Trust.

46.     Defendant Pittman, as a notary public, acts as an official of the State of Tennessee when exercising his authority as a notary public.

47.     A notary public in the State of Tennessee has a duty to ensure not only that a person executing a document in the presence of a notary is the person he/she is claiming to be, but also that the person is executing the document of his/her own free will.

48.     By notarizing the Deed of Trust, when he was not in the presence of Mr. Ray or Ms. Shepard (as neither Mr. Ray nor Ms. Shepard have ever met Mr. Pittman), Mr. Pittman breached his duty of care in acting as a notary public.

49.     Mr. Pittman's breach of the duty of care imposed on a notary public has caused damages to Mr. Ray and Ms. Shepard because, without the false notary, MBC could not have obtained a lien on their home (because the Register of Deeds requires a notary seal on deeds to file them).  The damages Mr. Ray and Ms. Shepard have suffered include the loss of access to equity in their house, and damages in the form of attorneys' fees and other costs which will be necessary to clear up the title to their home.

15

50. For their claim against Defendant Pittman for professional negligence/malpractice, Mr. Ray and Ms. Shepard seek damages in an amount to be determined at trial but not less than $100,000, plus costs and attorneys' fees.

**COUNT SIX: LIBEL/SLANDER OF TITLE AND REMOVAL OF CLOUD ON TITLE**

51. Plaintiffs re-aver and incorporate by reference the averments made throughout this Complaint into Count Six, which is pleaded additionally and alternatively, and for Count Six, Plaintiffs allege that Defendant MBC committed libel/slander of title against Mr. Ray's and Ms. Shepard's home and seeks removal of the cloud on their title.

52. MBC knowingly and intentionally filed the Deed of Trust on Mr. Ray's and Ms. Shepard's Real Property with knowledge that they did not sign the Deed of Trust in the presence of a notary. Defendant Pittman is the Director of Risk Management and office manager of MBC, and as such, it is within his authority to direct that the Deed of Trust be filed. He, himself, falsely notarized the Deed of Trust, and his actions and knowledge must be imputed to MBC which holds the lien on Mr. Ray's and Ms. Shepard's property.

53. Because of MBC's intentional filing of the Deed of Trust, MBC intended to falsely claim an interest in Mr. Ray's and Ms. Shepard's property, and that interest has prevented Mr. Ray and Ms. Shepard from mortgaging, selling or otherwise alienating their property as is their right. MBC's actions have caused Mr. Ray and Ms. Shepard damages in the loss of access to their equity in the Real Property.

54. On this claim for libel/slander of title, Plaintiffs seek not only damages in the full amount of equity lost in an amount not less than $100,000, but also the removal of the cloud on their title, and associated costs and attorney's fees.

**WHEREFORE**, Plaintiffs respectfully pray that this Court:

1. On Count One, award Plaintiffs actual and/or statutory damages not less than $100,000.00, costs, attorneys' fees and any other relief available under RICO against all Defendants;

2. On Count Two, award Plaintiffs actual and/or statutory damages, costs, attorneys' fees and any other relief (including equitable relief) available under TILA against Defendant MBC;

3. On Count Three, award Plaintiffs actual and/or statutory damages not less than $100,000.00 (plus treble damages), costs, attorneys' fees and any other relief available under TCPA against Defendant MBC;

4. On Count Four, award Plaintiffs actual damages not less than $100,000.00 and punitive damages against all Defendants jointly and severally for fraud;

5. On Count Five, award Plaintiffs actual damages not less than $100,000.00 against Defendant Pittman for professional negligence/malpractice;

6. On Count Six, award Plaintiffs actual damages not less than $100,000.00 against MBC for libel/slander of title and enter an Order removing the cloud on the title to Mr. Ray's and Ms. Shepard's Real Property; and

7. Award any other additional relief to which Plaintiffs may be entitled at law or equity.

Submitted this 13th day of September, 2018.

RESPECTFULLY SUBMITTED,

s/ Matthew F. Jones
Matthew F. Jones (MS 100430, TN BPR # 25825)
MEMPHIS AREA LEGAL SERVICES, INC.
22 N. Front Street, 11th Floor
Memphis, TN 38103
(901) 523-8822
(901) 255-3429 (direct)
(901) 843-2929 (fax)
mjones@malsi.org

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been filed using the Court's CM/ECF system which sent notice of the filing to all counsel of record this 13th day of September, 2018.

s/ Matthew F. Jones