IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| GLENN RAY and LORIS SHEPARD, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 18-2144 |
| ) | |
| v. ) | |
| ) | |
| MEMPHIS BONDING COMPANY, ) | |
| INC.; GEORGE A. HITT; TRACY ) | |
| VAN PITTMAN; and SAM HAWKINS, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

## ORDER

Before the Court is Defendants Memphis Bonding Company, Inc. ("Memphis Bonding"), George A. Hitt, Tracy Van Pittman, and Sam Hawkins's July 23, 2018 Motion to Dismiss for Failure to State a Claim. (ECF No. 27.) Plaintiffs Glenn Ray and Loris Shepard responded on September 27, 2018. (ECF No. 36-1.) Defendants replied on February 25, 2019. (ECF No. 46.)

For the following reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## I. Background

For purposes of the Motion to Dismiss, the facts are taken from the Second Amended Complaint.

Memphis Bonding is a bail bonding company operating in the Memphis, Tennessee area. (See ECF No. 33 ¶ 2.) Defendant Hitt is the president and sole shareholder of Memphis Bonding. (Id. ¶ 3.) In May 2015, Shepard's son, Eddie Keller, was arrested, and the presiding court set his bond at $60,000. (Id. ¶ 10.) Memphis Bonding contacted Plaintiffs and told them about the possibility of purchasing a bail bond to secure Keller's pretrial release. (Id. ¶ 9.) Shepard told the bonding agent at Memphis Bonding that she did not have enough money to pay the ten percent premium on the bond. (Id.) Keller's sister paid Memphis Bonding $2,000 towards the bond premium. (Id.) Memphis Bonding then "repeatedly contacted" Shepard to encourage her to use her home as collateral to secure Keller's release. (Id.)

Plaintiffs went to Memphis Bonding's offices. (Id. ¶ 11.) They met with Defendant Sam Hawkins, a bonding agent working for Memphis Bonding. (Id.) Hawkins produced documents that Plaintiffs signed. (Id.) He represented the documents guaranteed that Keller would appear in court. (Id.) Hawkins told Plaintiffs that if Keller did appear, Plaintiffs would owe no money and have no obligation to Memphis Bonding. (Id. ¶ 24.) Without receiving a copy of what they had signed, Plaintiffs

left. (Id.) The next day, Hawkins called Plaintiffs and told
them that they needed to sign additional documents immediately.
(Id.) Plaintiffs met Hawkins at a gas station in Memphis, and
they signed another document. (Id.) Hawkins was the only person
present to witness Plaintiffs sign that document. (Id.)
Plaintiffs again left without receiving a copy of the document
they had signed. (Id.)

On February 14, 2016, Memphis Bonding filed a deed of trust
(the "Deed of Trust") with the Shelby County Register's Office,
which recorded the deed. (Id. ¶ 11.) The Deed of Trust arrived
by United States Mail with a check from Memphis Bonding to cover
the filing fee. (Id.) The Deed of Trust is a preprinted form
with blanks that were filled in with the date February 14, 2016,
the names "Ray Glenn" and Loris Shepard as the "first part,"
Memphis Bonding Company as the "Trustee" and Grantee, the
property description of Plaintiffs' house, and a description of
indebtedness to Memphis Bonding in the sum of $60,000.00 "as
. . . Collateral for Eddie Keller." (Id.; Deed of Trust, ECF
No. 33-1.) On the second page, Plaintiffs' signatures appear.
(Id.) The signature of a notary appears twice along with the
notary seal of Defendant Pittman. (Id.) Plaintiffs deny they
appeared before a notary. (Id.)

Keller appeared in court, and the bail bond was not
forfeited. (Id. ¶ 13.) Plaintiffs learned in 2018, however,

that the Deed of Trust remained a $60,000 encumbrance on their house. (Id.) After learning of the encumbrance, Plaintiffs asked Hawkins about the Deed of Trust and any outstanding indebtedness. (Id. ¶ 14.) Hawkins told Plaintiffs that they continued to owe approximately $4,003 to Memphis Bonding. (Id.) When Plaintiffs asked Hawkins why they had not been notified about the balance they purportedly owed, Hawkins replied: "Talk to my lawyer." (Id.)

On March 1, 2018, Plaintiffs filed a complaint against Defendants. (ECF No. 1.) Plaintiffs allege civil violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), the Truth-in-Lending Act (the "TILA"), and various state laws. (ECF No. 33 ¶¶ 17-53.) Plaintiffs filed their First Amended Complaint on June 25, 2018. (ECF No. 21.) Defendants filed their Motion to Dismiss on July 23, 2018. (ECF No. 27.) Plaintiffs filed their Second Amended Complaint on September 13, 2018. (ECF No. 33.) The Court determined that the Second Amended Complaint did not moot Defendants' Motion to Dismiss. (Order to Show Cause, ECF No. 34.) On September 27, 2018, Plaintiffs filed a Motion for Leave to File a Response to Defendants' Motion to Dismiss. (ECF No. 36.) On October 5, 2018, Defendants filed a Renewed Motion to Dismiss and/or Motion for Judgment seeking dismissal of this case based on Plaintiffs' alleged lack of appropriate response to the Court's September

4

13, 2018 Order to Show Cause. (ECF No. 37.) On February 12, 2019, the Court granted Plaintiffs' Motion for Leave to File a Response and denied Defendants' Renewed Motion to Dismiss. (Order, ECF No. 45.)

On January 18, 2019, the Court consolidated this case with _Bailey v. Memphis Bonding Co., Inc._, No. 18-2115, and _Sharp v. Memphis Bonding Co., Inc._, No. 18-2143, for all purposes. (Min. Entry, ECF No. 42.)

## II.   Jurisdiction & Choice of Law

The Court has federal-question jurisdiction. Under 28 U.S.C. § 1331, United States district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs allege that Defendants' conduct constitutes a civil violation of RICO, 18 U.S.C. §§ 1961, _et seq._, and the TILA, 15 U.S.C. §§ 1601, _et seq._ (_See_ ECF No. 33 ¶¶ 17—29, 30—34.) Those claims arise under the laws of the United States. _See_ 28 U.S.C. § 1331; _see also_ 18 U.S.C. § 1964(d) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ."); _Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n_, 176 F.3d 315, 318 (6th Cir. 1999) (noting that RICO claims provide basis for federal-question jurisdiction).

The Court has supplemental jurisdiction over Plaintiffs'
state-law claims. See 28 U.S.C. § 1367(a). Those claims derive
from a "common nucleus of operative fact" with Plaintiffs'
federal claims against Defendants. United Mine Workers of Am.
v. Gibbs, 383 U.S. 715, 725 (1966); Soehnlen v. Fleet Owners
Ins. Fund, 844 F.3d 576, 588 (6th Cir. 2016); see also 28 U.S.C.
§ 1367(a).

State substantive law applies to state-law claims brought
in federal court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64
(1938). Where, as here, there is no dispute that a certain
state's substantive law applies, the court will not conduct a
choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio
Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties
assume in their respective motions and memoranda that Tennessee
substantive law applies to Plaintiffs' state-law claims and
ground their arguments accordingly. The Court will apply
Tennessee substantive law to Plaintiffs' state-law claims.

## III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows dismissal
of a complaint that "fail[s] to state a claim upon which relief
can be granted." A Rule 12(b)(6) motion permits the "defendant
to test whether, as a matter of law, the plaintiff is entitled
to legal relief even if everything alleged in the complaint is
true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing

6

Nishiyama v. Dickson Cty., 814 F.2d 277, 279 (6th Cir. 1987)).

A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. However, a plaintiff's "[t]hreadbare recitals of the elements of

7

a cause of action, supported by mere conclusory statements, do not suffice." Id.

**IV. Analysis**

**A. RICO Claims**

Plaintiffs allege that Defendants engaged in a pattern of racketeering activity to fraudulently obtain title to the real property that customers of Memphis Bonding put forth as collateral. (ECF No. 33 ¶ 23.) Plaintiffs allege Defendants falsely represented that the deeds of trust customers gave to Memphis Bonding as collateral would be released when the criminal charges against the bond's principal were resolved. (See id.) Plaintiffs represent that Defendants made false representations to induce customers to sign blank or only partially filled in forms. (See id.) Defendants later used those forms to create deeds of trust on the customers' property naming Memphis Bonding or Defendant Hitt as grantee. (See id.) Those deeds were falsely notarized by Defendant Pittman who did not witness customers signing the deeds. (See id.) Defendants then filed the deeds of trust in Tennessee and Mississippi by sending them through the mail. (Id. ¶ 16, 22.)

"RICO" is the acronym for the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68. RICO provides a private right of action to any person "injured in his business or property by reason of" a RICO violation. Id. § 1964(c).

Congress included a civil cause of action to "prevent organized crime from obtaining a foothold in legitimate business." In re ClassicStar Mare Lease Litig., 727 F.3d 473, 483 (6th Cir. 2013) (internal quotations omitted). In pertinent part, RICO prohibits the following conduct:

- Section 1962(b) prohibits a person from using a pattern of racketeering activity, or the collection of an unlawful debt, to acquire or maintain control over an enterprise. See 18 U.S.C. § 1962(b).

- Section 1962(c) prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering, or the collection of an unlawful debt. See 18 U.S.C. § 1962(c).

- Section 1962(d) prohibits a person from conspiring to violate Sections 1962(b) or (c). See 18 U.S.C. § 1962(d).

Plaintiffs bring claims against Defendants under these three subsections.[1] (See ECF No. 33 ¶¶ 23, 26, 27.)

Five elements are common to all RICO violations: (1) the commission of at least two predicate RICO offenses; (2) the predicate offenses formed a "pattern of racketeering activity"; (3) the existence of an "enterprise" as defined under RICO; (4) a connection between the pattern of racketeering activity and the enterprise; and (5) damages resulting from the RICO violation. 18 U.S.C. § 1962(a)-(c); see VanDenBroeck v. CommonPoint Mortg. Co., 210 F.3d 696, 699 (6th Cir. 2000)

_____

[1]     Plaintiffs do not bring a claim under 18 U.S.C. § 1962(a).

abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co., 553 U.S. 639 (2008). A plaintiff showing the collection of an unlawful debt, however, need not otherwise establish a "pattern of racketeering activity." See 18 U.S.C. § 1962.

Defendants argue that Plaintiffs' RICO claims should be dismissed for four reasons: (1) Plaintiffs fail to plead plausibly that RICO "persons" distinct from the alleged RICO "enterprise" engaged in unlawful activity; (2) Plaintiffs fail to allege two or more predicate offenses; (3) Plaintiffs fail to allege a "conspiracy"; and (4) Plaintiffs fail to allege the existence of a RICO enterprise separate "from the alleged pattern of racketeering." (ECF No. 27-1 at 117—20, 120—21, 121, 121—22.)

### 1. Distinctness

To succeed, Plaintiffs must show the existence of two distinct entities: (1) a RICO "enterprise"; and (2) a RICO "person" who used or conspired to use the enterprise to violate RICO. See Fleischhauer v. Feltner, 879 F.2d 1290, 1297 (6th Cir. 1989). Section 1961(3) defines a "person" as an "entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). Section 1961(4) defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

Plaintiffs allege that Defendants Memphis Bonding, Hitt, Pittman, and Hawkins are RICO "persons," and that Memphis Bonding is the RICO "enterprise." (ECF No. 33 at ¶¶ 20–21.) Defendants argue that Plaintiffs fail to allege adequately the existence of RICO persons distinct from the RICO enterprise. (See ECF No. 27-1 at 117–20.) Defendants contend that the alleged relationship between Defendants and Memphis Bonding is a routine business relationship, which is insufficient to create RICO liability. (See id.)

To state a valid RICO claim, the RICO person and the RICO enterprise must be separate and distinct entities, "since only 'persons' can be held liable for RICO violations, while the 'enterprise' itself is not liable." In re ClassicStar Mare Lease Litig., No. 5:07-cv-353-JMH, 2019 WL 289070, at *3 (E.D. Ky. Jan. 18, 2019). To satisfy the "distinctness" requirement, Plaintiffs must allege facts suggesting that the enterprise is not the same person referred to by a different name. Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).

Defendants' argument that Defendants Hitt, Pittman, and Hawkins are not distinct from Memphis Bonding because they are "employed by or associated with" Memphis Bonding is not well-taken. (ECF No. 27-1 at 115.) "[I]ndividual defendants are always distinct from corporate enterprises because they are legally distinct entities, even when those individuals own the

11

corporations or act only on their behalf." ClassicStar, 727
F.3d at 492 (relying on Cedric Kushner); see also United States
v. Najjar, 300 F.3d 466, 484 (4th Cir. 2002) ("A certain degree
of 'distinctness' is required for RICO liability; however, where
a corporate employee . . . 'conducts the corporation's affairs
in a RICO-forbidden way,' the only 'separateness' required is
that the corporate owner/employee be a natural person and so
legally distinct from the corporation itself") (quoting Cedric
Kushner, 533 U.S. at 163).

Memphis Bonding, however, is "a corporation [that] cannot
be both the 'enterprise' and the 'person' conducting or
participating in the affairs of that enterprise." Begala v. PNC
Bank, Ohio, Nat. Ass'n, 214 F.3d 776, 781 (6th Cir. 2000).
Plaintiffs cannot maintain an action against Memphis Bonding as
both the "enterprise" and the "person" subject to liability under
RICO. See Begala, 214 F.3d at 781; accord Gilman v. Trott, No.
1:07-cv-1031, 2008 WL 4057542, at *4 (W.D. Mich. Aug. 28, 2008).
Plaintiffs' RICO claims against Memphis Bonding must be
dismissed.

Defendants' Motion to Dismiss Plaintiffs' RICO claims
against Memphis Bonding is GRANTED.  Plaintiffs have sufficiently
pled that Hitt, Pittman, and Hawkins are distinct from the
alleged RICO enterprise.  Defendants' Motion to Dismiss the RICO

claims against those defendants on grounds of distinctness is DENIED.

### 2. Pattern of Racketeering Activity

Plaintiffs must adequately allege "a pattern of racketeering activity." 18 U.S.C. § 1962(b), (c). A pattern of racketeering activity requires, at a minimum, two acts of racketeering activity within ten years of each other. <u>Id.</u> § 1961(5).[2] The acts of racketeering that constitute predicate offenses for RICO violations are listed at 18 U.S.C. § 1961(1). <u>See</u> <u>Hubbard v. Select Portfolio Servicing, Inc.</u>, 736 F. App'x 590, 593 (6th Cir. 2018). "[T]he plaintiff must prove each prong of the predicate offense . . . to maintain a civil action under the RICO statute." <u>Cent. Distribs. of Beer, Inc. v. Conn</u>, 5 F.3d 181, 183–84 (6th Cir. 1993) <u>vacated on other grounds by</u> <u>Bridge</u>, 553 U.S. at 639.

Defendants argue that Plaintiffs have alleged only one predicate offense. (<u>See</u> ECF No. 27-1 at 117–18.) They contend that Plaintiffs allege only one instance of mail fraud, and thus their RICO claims must fail. (<u>Id.</u>) Plaintiffs respond that

---

[2] Two acts of racketeering are the minimum required. <u>See</u> 18 U.S.C. § 1961(5). "In practice, two acts of racketeering activity within ten years will not generally give rise to liability." <u>Grubbs v. Sheakley Grp., Inc.</u>, 807 F.3d 785, 804 (6th Cir. 2015). The plaintiff must also establish "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 237–39 (1989). This requirement is known as the "relationship plus continuity" test. <u>See</u> <u>Brown v. Cassens Transp. Co.</u>, 546 F.3d 347, 355 (6th Cir. 2008). The parties do not address that test, and the Court need not consider it <u>sua sponte</u>.

the Second Amended Complaint alleges "much more than just two predicate offenses." (ECF No. 36-2 at 207.) They contend that they have alleged "many years of racketeering activity in interstate filings of Deeds of Trust[,]" and that they "actually name[] four other victims in three other lawsuits . . . ." (Id.)

Plaintiffs allege that Defendants committed acts of mail fraud as part of their scheme to defraud their customers and that those acts constitute a pattern of racketeering activity. (See ECF No. 33 ¶ 25.) Mail fraud is a predicate offense under RICO. See 18 U.S.C. § 1961(1). When an alleged pattern of racketeering consists entirely of fraudulent acts, a plaintiff's allegations must comply with the heightened pleading standard under Federal Rule of Civil Procedure 9(b). Rule 9(b) requires Plaintiffs to allege, "[a]t a minimum, . . . the time, place and contents" of the misrepresentation they allege. Frank v. Dana Corp., 547 F.3d 564, 569-70 (6th Cir. 2008).

At the motion to dismiss stage, the court must also consider Federal Rule of Civil Procedure 8, which says that a plaintiff need only provide a "short and plain statement of the claim" and "simple, concise, and direct" allegations. "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8"; rather, "the two rules must be read in harmony." Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988). Read together, Rules 8 and 9(b)

require that a plaintiff "provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." Id. Given those requirements, the question is whether Plaintiffs sufficiently allege that Defendants committed at least two instances of mail fraud.

Plaintiffs set out Defendants' alleged scheme to defraud their customers in paragraphs 23 and 24 of their Second Amended Complaint. (See ECF No. 33 ¶ 22-23.) Defendants appear to concede those allegations adequately allege one violation of mail fraud. Plaintiffs argue that paragraphs 23 and 24, read in conjunction with three other paragraphs, allege additional instances of mail fraud that Defendants committed against other victims. (See ECF No. 36-2 at 207.)[3]

The additional allegations are paragraphs 15, 16, and 28 of the Second Amended Complaint. (See id.) In relevant part, paragraph 15 alleges that Memphis Bonding "has been a prolific filer of Deeds of Trust identical in form" to the one Plaintiffs signed and that those deeds of trust were filed by mail. (ECF No. 33 ¶ 15.) Paragraph 16 alleges that three other lawsuits "with very similar allegations have been filed in this Court . . . ." (Id. ¶ 16 (case citations omitted).) Paragraph 28

---

[3]      The plaintiff in a RICO case need only be injured by a single predicate act committed in furtherance of the scheme. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 488-93 (1985). Plaintiffs may use predicate acts against other victims to show of a pattern of racketeering. Id.

alleges that "[t]he scheme which the Defendants perpetrated on [Plaintiffs] is a pattern which appears in other cases of [Memphis Bonding's] customers, including cases already filed in this Court (as mentioned above)." (Id. ¶ 27.)

Ordinarily, the Court would be limited to the four corners of Plaintiffs' Second Amended Complaint when addressing a motion to dismiss. Within those four corners, Plaintiffs do not allege mail fraud against other individuals with sufficient particularity. Rule 9(b) requires Plaintiffs to allege, "with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Although Plaintiffs generally allege that Defendants defrauded "other customers" in a similar way, Plaintiffs do not allege the identity of those other customers or specifically allege the time, place, and contents of the misrepresentations made to them. Those allegations fail to state additional instances of mail fraud adequately.

Paragraphs 16 and 28 in Plaintiffs' Second Amended Complaint refer to allegations made against Defendants in the complaints of other cases pending in this court. (See ECF No. 33 ¶¶ 16, 28.) Plaintiffs allege that Memphis Bonding has committed acts of mail fraud against other customers and that those allegations are adequately pled in: (1) Knight v. Memphis Bonding Co., Inc., No. 18-2112; (2) Bailey v. Memphis Bonding Co., Inc., No. 18-2115; and (3) Sharp v. Memphis Bonding Co., Inc., No. 18-2143.

On a motion to dismiss under Rule 12(b)(6), the Court "consider[s] the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). The Court may take judicial notice of the facts alleged in the cases Plaintiffs cite. See Buck v. Thomas M. Cooley Law Sch., 597 F.3d 812, 816 (6th Cir. 2010) ("[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment."). That is especially true here, where Bailey and Sharp have been consolidated with Ray.

Mail fraud consists of (1) a scheme to defraud and (2) use of the mails in furtherance of the scheme. See Riverview Health Inst. LLC v. Med. Mut. of Ohio, 601 F.3d 505, 513 (6th Cir. 2010). The factual allegations in the Sharp complaint are similar to the allegations here. Therefore, the Court will consider whether Sharp adequately alleges one or more additional instances of mail fraud against Defendants that occurred within ten years of the mail fraud alleged in Plaintiffs' Second Amended Complaint.

### a. Scheme to Defraud

A scheme to defraud is "[i]ntentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right and which accomplishes

17

the designed end." Kenty v. Bank One, Columbus, N.A., 92 F.3d
384, 389-90 (6th Cir. 1996) (quoting Blount Fin. Servs., Inc.
v. Walter E. Heller & Co., 819 F.2d 151, 153 (6th Cir. 1987)).
A plaintiff must allege "misrepresentations or omissions which
were 'reasonably calculated to deceive persons of ordinary
prudence and comprehension'" on which the plaintiff relied. Id.

Plaintiff Kevin Sharp set forth Defendants' scheme to
defraud as follows:

> The pattern of racketeering consists of a fraudulent
> scheme by [Defendants] to obtain title to the Real
> Property of its customers by falsely representing that
> the collateral provided by the customers will be
> returned (as required by Tennessee law) when the
> criminal charges against the criminal defendant are
> resolved. By making that false representation,
> customers either sign documents which are blank or not
> fully completed, or customers provide enough
> information to the Defendants to create a Deed of Trust
> which is later signed and notarized, allowing [Memphis
> Bonding] to file a seemingly executed and notarized
> Deed of Trust with the appropriate office for recording
> such Deeds.

(No. 18-2143 ECF No. 33 ¶ 22.)

Sharp went to Memphis Bonding to secure a bail bond for his
stepson. (See id. ¶ 23.) Sharp alleges that Wendy Benton, a
bonding agent employed by Memphis Bonding, falsely represented
that Sharp would owe no money and have no obligation to Memphis
Bonding if his stepson appeared in court. (See id.) Sharp
alleges that Pittman "falsely notarized a signature of the Deed
of Trust which he did not witness because" Sharp did not

"personally appear" before Pittman.  (Id.)  Defendants mailed
the allegedly false deed of trust to the Shelby County Register's
Office on August 11, 2015.  (Id. ¶ 11.)  Sharp alleges that, as
a result, Defendants obtained a lien on his home "under false
and fraudulent circumstances."  (Id. ¶ 23.)

Sharp identifies the alleged misrepresentations, how those
misrepresentations were false or misleading, and the dates or
approximate dates on which they were made.  Sharp also alleges
that Defendants' misstatements and omissions were intentional.
(See id. ¶¶ 22, 23, 26.)  Sharp adequately sets out a scheme to
defraud.

### b. Use of Mails

Sharp alleges that Defendants' "scheme to obtain the Deed
of Trust fully anticipates the use of the mail because the
recording office accepts instruments by mail.  [Memphis Bonding]
has actually used the mail . . . to send the falsified Deed of
Trust to the recording office."  (Id. ¶ 22.)

Although Sharp does not allege who sent the deeds of trust
to the Register's Office, that is not dispositive.  "Where one
does an act with knowledge that the use of the mails will follow
in the ordinary course of business, or where such use can
reasonably be foreseen, even though not actually intended, then
he 'causes' the mails to be used."  United States v. Oldfield,
859 F.2d 392, 400 (6th Cir. 1988) (quoting Pereira v. United

States, 347 U.S. 1, 8-9 (1954)).  Sharp alleges that Memphis
Bonding and its employees engaged in a scheme that regularly
sent fraudulent deeds of trust in the mail.  (See ECF No. 33
¶ 22.)  Sharp alleges Defendants used the mails in the ordinary
course of business.  Because Sharp has adequately alleged a
scheme to defraud and the use of the mail, he has pled an instance
of mail fraud with sufficient particularity.

Plaintiffs incorporate the factual allegations of Sharp's
complaint and thereby adequately allege two or more instances of
mail fraud that serve as RICO predicates.

### 3. Conspiracy

Defendants argue that Plaintiffs have failed to allege a
RICO conspiracy in violation of 18 U.S.C. § 1962(d) adequately
because their business practices are authorized by Tennessee
law.  (See ECF No. 27-1 at 118-19.)

"To plausibly state a claim for a violation of 18 U.S.C.
§ 1962(d), plaintiffs must successfully allege all the elements
of a RICO violation, as well as alleg[e] 'the existence of an
illicit agreement to violate the substantive RICO provisions.'"
Heinrich v. Waiting Angels Adoption Servs., Inc., 668 F.3d 393,
411 (6th Cir. 2012) (quoting United States v. Sinito, 723 F.2d
1250, 1260 (6th Cir. 1983)).

Plaintiffs allege that Defendants agreed to engage in the
scheme described above with the purpose of "obtain[ing] money

from [Plaintiffs] when none was owed." (ECF No. 33 ¶ 27.)
Plaintiffs allege that each participant in the scheme played a
particular role in carrying it out. (See id.) The Court has
determined that Plaintiffs have adequately pled RICO claims under
§ 1962(b) and § 1962(c) against Defendants Hitt, Pittman, and
Hawkins. (See infra Sections IV(A)(1)–(2).) Plaintiffs'
allegation that Defendants agreed to take part in that scheme is
sufficient to state a claim for RICO conspiracy under § 1962(d).

Plaintiffs adequately allege that Hitt, Pittman, and
Hawkins violated 18 U.S.C. § 1962(d). Defendants' Motion to
Dismiss the § 1962(d) claims against those defendants on grounds
that their business practices were authorized by Tennessee law
is DENIED.

### 4. Separateness

Defendants argue that any alleged relationship among them
is a routine business relationship that is insufficient to create
RICO liability. (See ECF No. 27-1 at 119.) They contend
Plaintiffs fail to state a claim under RICO because Defendants'
business activities are not "separate from the pattern of
racketeering activity." (Id. (quotation omitted).)

As noted, to state a claim under RICO, Plaintiffs must
allege the existence of an "enterprise" within the meaning of
the statute. See VanDenBroeck, 210 F.3d at 699. An enterprise
includes any "individual, partnership, corporation, association,

or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To show the existence of an enterprise under RICO, a plaintiff must plead that the enterprise has: (1) a common purpose; (2) a structure or organization; and (3) the longevity necessary to accomplish the purpose. See Boyle v. United States, 556 U.S. 938, 946 (2009). The plaintiff must show that the enterprise exists "separate and apart from" the pattern of racketeering. United States v. Turkette, 452 U.S. 576, 583 (1981). "[S]imply conspiring to commit a fraud is not enough to trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes." VanDenBroeck, 210 F.3d at 699.

Memphis Bonding Company, Inc. is the alleged enterprise. (ECF No. 33 ¶ 21.) As a corporation, Memphis Bonding has a distinct organizational structure and a continuing legal existence. See Dolle v. Fisher, No. E2003-02356-COA-R3-CV, 2005 WL 2051288, at *5 (Tenn. Ct. App. Aug. 26, 2005) (Under Tennessee law, there is a "strong presumption" that a corporation is a separate legal entity). At the motion to dismiss stage, absent allegations that cast doubt on the existence of the alleged enterprise, "[c]ourts can reasonably assume that individuals and corporations have an organizational structure, are continuous, and have an existence separate and apart from any alleged pattern

of racketeering activity." _In re Am. Inv'rs Life Ins. Co._ _Annuity Mktg. & Sales Practices Litig._, 2006 WL 1531152, at *9 (E.D. Pa. June 2, 2006). Plaintiffs have adequately alleged the existence of a RICO enterprise.

* * *

Plaintiffs' RICO claims against Defendants Hitt, Pittman, and Hawkins are adequately pled. Defendants' Motion to Dismiss the RICO claims against those defendants is DENIED.

### B. Truth-in-Lending Act Claims

The Truth-in-Lending Act (the "TILA") is a federal consumer protection statute intended to promote the informed use of credit by requiring certain uniform disclosures by creditors. _See_ _In re Cmty. Bank of N. Va._, 418 F.3d 277, 303-04 (3d Cir. 2005) (citing 15 U.S.C. § 1607, _as implemented by_ Regulation Z, 12 C.F.R. §§ 226.1, _et seq._). The TILA has a dual purpose: "to facilitate the consumer's acquisition of the best credit terms available; and to protect the consumer from divergent and at times fraudulent practices stemming from the uninformed use of credit." _Jones v. TransOhio Sav. Ass'n_, 747 F.2d 1037, 1040 (6th Cir. 1984) (citing _Mourning v. Family Publ'ns Serv., Inc._, 411 U.S. 356 (1973)).

Consistent with its purposes, the TILA gives a consumer-borrower the right to rescind a loan secured by the borrower's principal dwelling within three business days of the transaction.

See 15 U.S.C. § 1635(a). The TILA allows rescission of a loan secured by the borrower's principal dwelling after three days if "the lender fails to deliver certain forms or to disclose important terms accurately." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411 (1998) (citing 15 U.S.C. § 1635(f)). Alternatively, the TILA allows an action for damages, including "actual damages," statutory damages in an amount "not less than $400 or greater than $4,000," and costs and attorney's fees. See 15 U.S.C. § 1640(a)(1)—(3).

To state a claim, the borrower must allege that the lender failed to disclose one of the enumerated items of information about the terms and conditions of the loan. See 15 U.S.C. § 1638(b)(1). Plaintiffs allege that the "agreement to defer payment of the 10% premium and other fees associated with a bail bond constitutes consumer credit extended for a personal or family purpose," and that Memphis Bonding committed several violations of Regulation Z because it provided no disclosures for the alleged debt. (See ECF No. 33 ¶¶ 31—33.)

Defendants argue that Plaintiffs' TILA claims fail because: (1) they are time-barred by the applicable one-year statute of limitations; and (2) because the TILA does not apply to the bail bonding agreements. (See ECF No. 27-1 at 123—24.)

## 1. Timeliness

Fifteen U.S.C. § 1640(e) provides that actions for damages alleging TILA regulation violations "may be brought . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(3). As a general rule, "the statute of limitations begins to run 'when the plaintiff has [a] complete and present cause of action' and 'can file suit and obtain relief.'" <u>Wike v. Vertrue, Inc.</u>, 566 F.3d 590, 593 (6th Cir. 2009) (quoting <u>Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.</u>, 522 U.S. 192, 201 (1997) (internal quotation marks omitted)). This suit is based on a bail bonding transaction that occurred on February 14, 2016. (<u>See</u> ECF No. 33 ¶ 12.) The initial Complaint was filed on March 1, 2018. (ECF No. 1.)

If TILA disclosures were never made to the borrower, the borrower "has a continuing right to rescind," and that right is "not dependent upon the one year statute of limitations period for a claim for damages." <u>Rudisell v. Fifth Third Bank</u>, 622 F.2d 243, 247–48 (6th Cir. 1980); <u>see also</u> 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation."). If the required disclosures were made, "the obligor has [only] three days to rescind a credit transaction." <u>McCoy v. Harriman Util. Bd.</u>, 790 F.2d 493, 496 (6th Cir. 1986). The borrower's continuing right to rescind

"'shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first, notwithstanding the fact that' the required disclosures have not been made." <u>Mills v. EquiCredit Corp.</u>, 172 F. App'x 652, 656 (6th Cir. 2006) (quoting 15 U.S.C. § 1635(f)).

Plaintiffs' claim for rescission of the credit agreement is timely because the initial Complaint was filed within three years of the alleged bail bonding transaction. <u>See</u> 15 U.S.C. § 1635(f). Plaintiffs' claims for damages under the TILA are subject to a one-year limitations period. <u>See</u> <u>id.</u> § 1640(f). Those claims are time-barred unless equitable tolling or estoppel applies.

"The doctrine of equitable tolling is distinct from the doctrine of equitable estoppel or fraudulent concealment." <u>Cheatom v. Quicken Loans</u>, 587 F. App'x 276, 281 (6th Cir. 2014). "Although a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally not an appropriate vehicle for dismissing a claim based upon the statute of limitations, if the allegations in the complaint affirmatively show that the claim is time-barred, dismissing the claim under Rule 12(b)(6) is appropriate." <u>Id.</u> at 279.

A defendant may be estoped from invoking a statute of limitations defense in cases of fraudulent concealment. <u>See</u> <u>Jones</u>, 747 F.2d at 1041–43 (holding that equitable tolling was

available in a TILA case when the complaint alleged "knowing and fraudulent concealment of the variable interest rate provision and of the mortgage note itself"). In such a case, the one-year limitations period begins to run when the borrower "discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation." Id. at 1041.

The elements of fraudulent concealment are:

> (1) there must be conduct or language amounting to a representation of a material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

Cheatom, 587 F. App'x at 280 (internal quotations omitted).

"The Federal Rules of Civil Procedure . . . require that the acts constituting fraudulent concealment of a claim be pled in the complaint." Evans v. Pearson Enters., Inc., 434 F.3d 839, 851 (6th Cir. 2006). Those allegations must be pled with particularity under Rule 9(b). See id. at 850–51. Equitable tolling based on fraudulent concealment should be "narrowly applied since '[s]tatutes of limitation are vital to the welfare of society and are favored in the law.'" Hill v. U.S. Dep't of Labor, 65 F.3d 1331, 1336 (6th Cir. 1995) (quoting Wood v. Carpenter, 101 U.S. 135, 139 (1879)).

The plaintiff must show that the defendant took affirmative steps to prevent the plaintiff from suing in time, "such as by hiding evidence or promising not to plead the statute of limitations." Bridgeport Music Inc. v. Diamond Time, Ltd., 371 F.3d 883, 891 (6th Cir. 2004). The plaintiff must also demonstrate that his failure to bring a timely suit "is not attributable to a lack of diligence on his part." Id. at 891. (internal quotation omitted)

Plaintiffs allege that Defendants' oral misrepresentations and falsely notarized deed of trust concealed Plaintiffs' TILA claims until they discovered that Defendants had misled them. Plaintiffs allege that they went to Memphis Bonding to sign some documents that guaranteed only that Keller would appear in court. (ECF No. 33 ¶ 11.) They allege that Hawkins "made the false representation that [Plaintiffs] would not owe any money or have any obligation to [Memphis Bonding] if Mr. Keller showed up in court." (Id. ¶ 24.) Plaintiffs also allege Pittman falsely notarized the Deed of Trust. (Id.)

Plaintiffs adequately allege fraudulent concealment of Defendants' TILA violations. First, Plaintiffs allege that Hawkins's statements misled them to believe that they would owe money to Memphis Bonding only if Keller failed to appear in court. Second, Plaintiffs allege that Defendants knew the true nature of the document Plaintiffs were signing. (See ECF No. 33

¶ 23.)  Third, Plaintiffs allege that Defendants made the oral
misrepresentations with the intent of inducing Plaintiffs to
sign the document.  (See id.)  Fourth, Plaintiffs represent that
they have "no knowledge of the existence or terms of [Memphis
Bonding's] debt because [Memphis Bonding] has refused to provide
copies of any such 'debt' documents."  (ECF No. 36-2 at 213; see
also ECF No. 33 ¶ 11.)  Fifth, it was reasonable for Plaintiffs
to rely on Defendants' representations about the document
Plaintiffs were given to sign.  Finally, the Court cannot
conclude at this stage of the litigation that Plaintiffs lacked
diligence in pursuing their claims.  Plaintiffs allege that
Defendants told them that Plaintiffs would owe no money and would
forfeit no collateral if Keller appeared in court.  (See ECF No.
33 ¶ 24.)  If true, Plaintiffs would have had no reason to
investigate their financial commitments to Defendants because
Keller did appear in court.

Plaintiffs' allegations support the inference that
equitable estoppel for fraudulent concealment is appropriate in
this case.  Defendants' Motion to Dismiss Plaintiffs' TILA claims
based on the statute of limitations is DENIED.

### 2. Applicability to Bail Bond Collateral

The TILA defines "credit" as "the right granted by a
creditor to a debtor to defer payment of debt or to incur debt
and defer its payment."  15 U.S.C. § 1602(f).  Defendants argue

that Plaintiffs' TILA claims fail because they have not pled facts showing Defendants extended credit to Plaintiffs. (See ECF No. 27-1 at 122—24.) Citing Buckman v. American Bankers Insurance Co. of Florida, 115 F.3d 892 (11th Cir. 1997), Defendants argue that bail bond agreements are not extensions of credit within the meaning of the TILA. (Id.)

Plaintiffs respond that Buckman is inapposite because it does not address agreements to defer the payment of a bail bonding premium. (See ECF No. 36-2 at 212.) Plaintiffs argue that where, as here, a person enters into a separate agreement with a bail bondsman to defer payment on the amount owed for the bond premium, the TILA applies. (Id.)

In Buckman, the plaintiff signed a bail bond agreement guaranteeing her daughter's court appearance on certain criminal charges. See 115 F.3d at 893. The plaintiff paid the defendant an $800 premium on her daughter's $8,000 bond and, as collateral for the bond, executed a promissory note and mortgage deed. (Id.) The plaintiff's daughter failed to appear for her court date, and the court forfeited the bond. (Id.) When the defendant attempted to collect on the note, the plaintiff sued the defendant claiming the bail bond agreement violated the TILA. (Id.)

The Eleventh Circuit rejected the plaintiff's argument that the TILA applied to the promissory note where she agreed to be

30

"obligated to the surety should the accused fail to appear in court." Buckman, 115 F.3d at 894. The court decided that this arrangement was a "contingent obligation," not an extension of credit. Id. (because "no amount is due . . . unless and until the bond is forfeited by the court," the plaintiff only became liable "by court order when the bond was breached"). The court explained that the lack of a "credit arrangement" -- that is, liability for a debt regardless of a certain condition being met -- meant no credit had been extended for purposes of the TILA. Id.

Unlike Plaintiffs, however, the Buckman plaintiff paid the entire bail bond premium up front. See id. at 893; see also Buckman v. Am. Bankers Ins. Co. of Fla., 924 F. Supp. 1156 (S.D. Fla. 1996). Viewed in the light most favorable to them, Plaintiffs allege that they became liable to Memphis Bonding for the unpaid portion of the bail bond premium when the paperwork was signed on February 14, 2016. (See ECF No. 33 ¶ 13, 14, 39.) They owed money to Memphis Bonding whether Keller appeared in court or not. That liability to Memphis Bonding was not premised on any contingency or possible court order. Such an agreement is a right granted by Memphis Bonding "to defer payment of debt" and thereby constitutes "credit" under the TILA. 15 U.S.C. § 1602(f).

Defendants' Motion to Dismiss Plaintiffs' TILA claims on the grounds that the TILA does not apply to bail bonding agreements is DENIED.

## C. Tennessee Consumer Protection Act Claims

The Tennessee Consumer Protection Act (the "TCPA") "prohibits [u]nfair or deceptive acts or practices affecting the conduct of any practice which is deceptive to the consumer or to any other person." Conner v. Hardee's Food Sys., Inc., 65 F. App'x 19, 25 (6th Cir. 2003); see Tenn. Code Ann. § 47-18-104(b); Timoshchuk v. Long of Chattanooga Mercedes-Benz, No. E2008-01562-COA-R3-CV, 2009 WL 3230961, at *3 (Tenn. Ct. App. Apr. 15, 2009). Plaintiffs allege that Memphis Bonding violated the TCPA when it falsely represented to Plaintiffs that the Deed of Trust they signed was collateral only to guarantee Keller's appearance in court. (ECF No. 33 ¶ 39.) Plaintiffs allege that act was deceptive because the Deed of Trust also served as collateral for the unpaid portion of the bail bond premium. (Id.)

Defendants argue that Plaintiffs have failed to state a claim under the TCPA because: (1) Plaintiffs' claims are time-barred by the applicable one-year statute of limitations; and (2) the business practices about which Plaintiffs complain are authorized by Tennessee law. (See ECF No. 27-1 at 122-26.)

**1. Timeliness**

A TCPA claim must be brought "within one (1) year from a person's discovery of the unlawful act or practice." Tenn. Code Ann. § 47-18-110; see also Power & Tel. Supply Co., Inc. v. SunTrust Banks, Inc., 447 F.3d 923, 929 (6th Cir. 2006). The statute of limitations for TCPA claims begins to run when a plaintiff discovers the injury or when, in the exercise of reasonable care and diligence, a plaintiff should have discovered it. Potts v. Celotex Corp., 796 S.W.2d 678, 680 (Tenn. 1990).

Defendants argue that Plaintiffs' TCPA claims accrued when they signed the Deed of Trust on February 14, 2016. (See ECF No. 27-1 at 128.) They contend that, because Plaintiffs "acknowledged signing documents at Memphis Bonding Company. . . . they knew or reasonably should have known of the 'injury' to their property upon the signing of the promissory note and the deed of trust." (Id. at 125.) Defendants represent that, if Plaintiffs had exercised reasonable diligence, Plaintiffs would have ensured that their Deed of Trust was released after Keller appeared in court. (Id.)

The issue of "[w]hether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question for the jury to determine." Wyatt v. A-Best Co., 910 S.W.2d 851, 854 (Tenn. 1995). To succeed at this stage, Defendants must show that "the undisputed facts demonstrate that

no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she was injured as a result of the defendant's wrongful conduct . . . ." Schmank v. Sonic Auto., Inc., No. E200701857COAR3CV, 2008 WL 2078076, at *3 (Tenn. Ct. App. May 16, 2008).

Plaintiffs allege they did not discover Defendants' alleged misrepresentations about their bail bonding agreement until 2018 when they learned of the Deed of Trust. (See ECF No. 33 ¶ 12.) Plaintiffs have alleged that Hawkins told them that any obligation they had to Memphis Bonding would be released if Keller appeared in court. (See id. ¶ 24.) Plaintiffs allege Keller did appear for his court date. (See id. ¶ 13.) The Court cannot conclude on the allegations before it that Plaintiffs failed to exercise reasonable care and diligence.

## 2. Application to Defendants' Business

Defendants argue that Plaintiffs fail to state a claim under the TCPA because the practices about which Plaintiffs complain are "standard bail bond procedures" authorized by Tennessee law. (See ECF No. 27-1 at 122.) Specifically, Defendants contend that their practices do not violate Tenn. Code. Ann. § 40-11-138(8). That statute makes it sanctionable conduct for a bondsman to:

> Accept anything of value from a <u>principal</u> except the premium; provided, that the bondsman shall be permitted to accept collateral security or other indemnity from the principal which shall be returned upon final termination of liability on the bond. . . .

Tenn. Code. Ann. § 40-11-138(8) (emphasis added). Defendants argue that obtaining a deed of trust from Plaintiffs did not violate the statute because Plaintiffs are not bond "principals." (ECF No. 27-1 at 1243.) Plaintiffs are the bond "indemnitors" to whom the statute does not apply. (<u>Id.</u>)

The TCPA prohibits a number of actions that constitute "unfair or deceptive acts or practices affecting the conduct of any trade or commerce" in Tennessee. <u>See</u> Tenn. Code Ann. § 47-18-104. Section 104(b) of the TCPA enumerates forty-nine specific acts that constitute "unfair or deceptive acts or practices." <u>Id.</u> § 47-18-104(b). The list includes "[r]epresenting that a consumer transaction confers or involves rights, remedies or obligations that [1] it does not have or involve or [2] which are prohibited by law." <u>Id.</u> § 47-18-104(b)(12) (bracketed numbers added). That provision contains two prongs, worded in the disjunctive. Plaintiffs need only allege violation of one prong to state a claim.

To support their specific TCPA claims, Plaintiffs allege that Defendants misrepresented the nature of the bail bonding agreement. (<u>See</u> ECF No. 33 ¶ 38.) Plaintiffs plausibly plead that Memphis Bonding violated the first prong of § 104(b)(12)

35

when it represented the agreement conferred or involved "rights, remedies or obligations that it does not have or involve . . . ." Tenn. Code Ann. § 47-18-104(b)(12). The Court need not address Defendants' argument that Memphis Bonding's business practices are not "prohibited by law" under the second prong.

Defendants' Motion to Dismiss Plaintiffs' TCPA claims is DENIED.

### D. Fraud

Plaintiffs bring two claims of common-law fraud. Plaintiffs allege that Defendants falsely represented that the paperwork Plaintiffs signed was securing only the appearance of Keller in court and not pledging security for any other debt. (See ECF No. 33 ¶ 43.) Plaintiffs also allege the Deed of Trust was fraudulently notarized because Defendant Pittman did not witness Plaintiffs signing it. (Id.)

To establish a claim for fraud in Tennessee, Plaintiffs must show that:

> (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008). Defendants contend Plaintiffs fail to state a

claim for fraud because (1) the statute of limitations has run, and (2) Plaintiffs have not alleged legally adequate damages. (See ECF No. 129–30.)

### 1. Timeliness

Defendants argue the statute of limitations has run on Plaintiffs' fraud claims. (See ECF No. 27-1 at 129.) Defendants contend that the "gravamen" of Plaintiffs' claims "sounds in fraud under the TCPA, [so] the same statute of limitations should be applied . . . ." (Id.) The Court need not address Defendants' argument. Assuming Plaintiffs' fraud claims should be treated as claims under the TCPA, the Court has determined that Plaintiffs' TCPA claims are timely. (See infra Section IV.C.1.)

### 2. Damages

In Tennessee, a party induced by fraud to enter a contract may elect between two remedies: he may treat the contract as void and sue for the equitable remedy of rescission; or he may treat the contract as existing and sue for damages. See Vance v. Schulder, 547 S.W.2d 927, 931 (Tenn. 1977). A party seeking to rescind a contract based on fraud need not show pecuniary loss. See 13 Am. Jur. 2d Cancellation of Instruments § 17. Having elected to pursue monetary damages, however, Plaintiffs must show they suffered pecuniary loss resulting from Defendants' misrepresentations. See City State Bank v. Dean Witter Reynolds, Inc., 948 S.W.2d 729, 738 (Tenn. Ct. App. 1996).

37

Plaintiffs allege no specific out-of-pocket loss. They allege that their house "remains encumbered to the extent of $60,000" and the "fraudulent scheme has caused [them] damages in the loss of access to credit on the equity in their home." (ECF No. 33 ¶ 43.) Defendants argue that these alleged damages are too speculative to sustain a claim for fraud. (See ECF No. 27-1 at 126–27.) They contend Plaintiffs' alleged damages are not sufficiently concrete because, for example, Plaintiffs "have not asserted facts that suggest or confirm they went to a bank and applied for access to their equity." (Id.)

Under Tennessee law, speculative damages cannot support a cause of action for fraud. See Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC, 491 F.3d 522, 531 (6th Cir. 2007) (citing Anderson-Gregory Co. v. Lea, 370 S.W.2d 934, 937 (Tenn. Ct. App. 1963) (noting that "it is the rule that speculative damages cannot be recovered")). According to the Restatement (Second) of Torts, "[o]ne who fraudulently makes a misrepresentation of fact . . . is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation." § 525 (1977) (emphasis added); see also Restatement (Third) of Torts: Liability for Economic Harm § 9 cmt. b(3) (Am. Law Inst., Tentative Draft No. 2, 2014) ("Damages awarded in tort for fraud may be measured on an 'out of pocket' basis"). The Supreme Court

38

has similarly noted that "the common law has long insisted that a plaintiff in [a deceit or misrepresentation] case show . . . that he suffered actual economic loss." <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 343–44 (2005).

The parties do not cite, and the Court has not found, Tennessee authority establishing whether an encumbrance on a plaintiff's real property is itself a sufficient injury to sustain a fraud action. In <u>Shah v. Chicago Title & Trust Co.</u>, an Illinois appellate court considered the fraud claim of condominium purchasers who complained that the defendant had misrepresented the status of certain encumbrances on the property. <u>See</u> 457 N.E.2d 147, 149 (Ill. App. Ct. 1983). The court recognized that the plaintiffs could not recover for a "purely speculative loss." <u>Id.</u> at 151. The plaintiffs argued that, if they had tried to sell the condominium during the three-month period when the title was encumbered, they "may have encountered difficulty," but there was no evidence that the plaintiffs had actually tried to sell the property. <u>Id.</u> The court held that the plaintiffs' "hypothetical difficulty in selling their condominium is a purely speculative loss for which the law of common law fraud will offer no remedy." <u>Id.</u>

There are similar considerations here. Plaintiffs allege their house was encumbered by the fraudulently-induced Deed of Trust, but they do not allege actual out-of-pocket losses

resulting from that encumbrance. Without more, Plaintiffs'
"hypothetical difficulty" in obtaining credit secured by the
equity in their home is a speculative loss that cannot sustain
their claims for fraud.

Defendants' Motion to Dismiss Plaintiffs' common-law fraud
claims is GRANTED.

### E. Professional Negligence and Malpractice

Plaintiffs allege that Defendant Pittman breached his duty
to Plaintiffs by notarizing the Deed of Trust without actually
witnessing Plaintiffs' signatures. (See ECF No. 33 ¶ 48.)
Defendants contend Plaintiffs fail to state a claim for
professional negligence because (1) the claim is untimely, and
(2) Plaintiffs fail to allege legally adequate damages. (See
ECF No. 27-1 at 127–28.)

#### 1. Timeliness

The parties dispute whether Plaintiffs' claim for
professional negligence is time-barred. (See id. at 128.)
Defendants argue that Tenn. Code Ann. § 28-3-104(a) imposes a
one-year statute of limitations on professional negligence and
malpractice claims. (Id.) Plaintiffs contend that their claim
is subject to the three-year statute of limitations under Tenn.
Code Ann. § 28-3-105. (See ECF No. 36-2 at 218.) This matter
was filed on March 1, 2018, and the alleged bail bonding
agreement was executed on February 14, 2016. Absent tolling of

the statute, the viability of Plaintiffs' claim turns on which statute of limitations applies.

No party cites, and the Court has not found, any Tennessee authority discussing which statute of limitations applies to claims of negligence arising from a notary's misconduct. To determine the applicable statute of limitations, the court "must ascertain the gravamen of each claim . . . ." Benz-Elliott v. Barrett Enters., LP, 456 S.W.3d 140, 149 (Tenn. 2015). To ascertain the gravamen of a claim, the "court must first consider the legal basis of the claim and then consider the type of injuries for which damages are sought." Id. at 151. This two-step approach is "fact-intensive and requires a careful examination of the allegations of the complaint as to each claim for the types of injuries asserted and the damages sought." Id.

Plaintiffs allege that Pittman negligently breached his duty to Plaintiffs by notarizing the Deed of Trust without actually witnessing Plaintiffs' signatures. (See ECF No. 33 ¶ 48.) Plaintiffs' alleged damages resulting from Pittman's negligence are "the loss of access to equity in their house" and the "attorneys' fees and court costs" required to clear the title to their home. (ECF No. 33 ¶ 49.)

Negligence claims for "injuries to the person" are subject to a one-year statute of limitations. Tenn. Code Ann. § 28-3-104(a)(1)(A). Negligence claims for injuries to property are

subject to a three-year statute of limitations. See <u>Id.</u> §§ 105(1)–(2); <u>Taylor v. Miriam's Promise</u>, No. M201701908COAR3CV, 2019 WL 410700, at *7 (Tenn. Ct. App. Jan. 31, 2019).

Tennessee courts have recognized that the phrase "injures to the person," as it is used in Tenn. Code Ann. § 28-3-104(a)(1)(A), carries a broader meaning than merely physical injury to the body. See <u>Blalock v. Preston Law Grp., P.C.</u>, No. M2011-00351-COA-R3-CV, 2012 WL 4503187, at *5 (Tenn. Ct. App. Sept. 28, 2012). Courts have applied this one-year limitations statute to retaliatory discharge claims, <u>Sudberry v. Royal & Sun All.</u>, M2005-00280-COA-R3-CV, 2006 WL 2091386, at *5 (Tenn. Ct. App. July 27, 2006), abuse of process claims, <u>Blalock</u>, 2012 WL 4503187, at *7, mental anguish claims, <u>In re Estate of Wair</u>, No. M2014-00164-COA-R3-CV, 2014 WL 3697562, at *3 (Tenn. Ct. App. July 23, 2014), and wrongful death claims, <u>Sullivan ex rel. Wrongful Death Beneficiaries of Sullivan v. Chattanooga Med. Inv'rs., LP</u>, 221 S.W.3d 506, 508 (Tenn. 2007).

In adopting this broader interpretation, Tennessee courts have held that the one-year statute of limitations applies to "actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law." <u>Brown v. Dunstan</u>, 409 S.W.2d 365, 367 (Tenn. 1966)

However, injuries to the person should be "distinguished from those [injuries] which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property." Id. Tennessee courts have rejected the narrow conclusion that "injury to property as contemplated [by Tenn. Code Ann. § 28-3-105] is limited to physical injury to property." Vance, 547 S.W.2d at 932. They have adopted the "opinion that a loss in value is also considered injury to property." Gunter v. Lab. Corp. of Am., 121 S.W.3d 636, 642 (Tenn. 2003). When a court is faced with a dispute about which of the two statutes of limitations cited above applies, it must "determine whether [the plaintiff's] alleged injuries arise out of [his] property rights or [his] rights as a 'rational being.'" Id.

The legal basis for Plaintiffs' claim is negligence. They seek compensatory damages in an amount not less than $100,000.00, costs, and attorneys' fees. (See ECF No. 33 ¶ 50.) The gravamen of Plaintiffs' claim is an encumbrance on their real property, their resulting lack of access to their real property's equity, and legal costs associated with defending their title to the property. Those injuries accrue to Plaintiffs "by virtue of an interest created by . . . property." Brown, 409 S.W.2d at 367. The three-year statute of limitations imposed by Tenn. Code Ann.

§ 28-3-105 applies to this claim.  Plaintiffs' negligence claim against Pittman is not time-barred.

### 2. Damages

Defendants argue that Plaintiffs fail to state a claim for negligence because Plaintiffs have not identified any harm resulting from Pittman's alleged misconduct. (<u>See</u> ECF No. 27-1 at 127.)  They contend that, even if Pittman were not present to witness Plaintiffs signing the Deed of Trust, Plaintiffs "were able to accomplish the purpose of their visit, which was to use real property to obtain [Keller's] freedom . . . ."  (<u>Id.</u>) Plaintiffs' damages resulting from Pittman's alleged negligence are "the loss of access to equity in their house" and the "attorney's fees and court costs" required to clear the title to their home.  (ECF No. 33 ¶ 49.)

The Court has determined that one of Plaintiffs alleged injuries, their hypothetical loss of access to the equity in their house, was insufficient to sustain their fraud claims. (<u>See</u> <u>infra</u> Section IV.D.2.)  The same is true of their negligence claim.  <u>See</u> <u>Maple Manor Hotel, Inc. v. Metro. Gov't of Nashville & Davidson Cty.</u>, 543 S.W.2d 593, 599 (Tenn. Ct. App. 1975) ("'The rule, applicable . . . in actions of tort, is that uncertain, contingent, or speculative damages may not be recovered.'") (quoting 25 C.J.S. Damages § 26)

Plaintiffs' allegation about legal expenses is ambiguous. They seek "damages in the form of attorneys' fees and other costs which will be necessary to clear up the title to their home." (ECF No. 33 ¶ 49.) It is not clear whether Plaintiffs are referring to the legal costs resulting from this litigation or a possible future legal action to quiet title to their property. To the extent Plaintiffs seek damages to recover legal costs from a hypothetical future action, those damages are too speculative. "[T]o recover for [the] future effects of an injury, the future effects must be shown to be reasonably certain and not a mere likelihood or possibility . . . ." Rye v. Women's Care Ctr. of Memphis, MPLLC, 477 S.W.3d 235, 267 (Tenn. 2015) (internal quotation omitted). Plaintiffs have not alleged facts suggesting future litigation is "reasonably certain" to occur. Assuming that a future lawsuit is reasonably certain, the amount of costs incurred during that hypothetical litigation is mere speculation.

To the extent Plaintiffs argue the instant litigation is itself the injury suffered, the Court finds no Tennessee authority addressing whether damages resulting from the cost of litigation are sufficient to meet the damages element of a negligence claim. The Court concludes, however, that the costs incurred by Plaintiffs in prosecuting this litigation are not a cognizable injury. To hold otherwise would render the damages

45

element of negligence a nullity for every plaintiff who hires an attorney or pays a court filing fee. Cf. Saltire, 491 F.3d at 530 ("'Damages attributable solely to the existence of litigation are clearly insufficient to sustain the necessary element of damages in a fraud claim.'") (quoting Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md., 763 F. Supp. 28, 33 (S.D.N.Y. 1991)).

Plaintiffs' alleged injuries cannot establish a plausible entitlement to recover damages for Pittman's negligence. Defendants' Motion to Dismiss that claim is GRANTED.

### F. Libel and Slander of Title

To establish a claim for slander or libel of title under Tennessee law, a plaintiff must show: "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statement proximately caused the plaintiff accumulative loss." Brooks v. Lambert, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999).

"[M]alice is a necessary ingredient of the action and must be both alleged and proven . . . ." Waterhouse v. McPheeters, 176 Tenn. 666, 145 S.W.2d 766, 767 (Tenn. 1940); see Brooks, 15 S.W.3d at 484. "A person acts maliciously when the person is motivated by ill will, hatred, or personal spite." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (1992). Although the complaint does not necessarily have to allege malice expressly,

46

it must at least allege "sufficient facts to give rise to a reasonable inference that the defendants acted maliciously." Ezell v. Graves, 807 S.W.2d 700, 704 (Tenn. Ct. App. 1990). The Federal Rules of Civil Procedure also require the plaintiff to plead malice either directly or by inference because it is an essential element of a claim for slander or libel of title under Tennessee law. See Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

Plaintiffs fail to allege malice or any facts that would give rise to a reasonable inference of malice. See Waterhouse, 145 S.W.2d at 767. Plaintiffs fail to state a claim for libel or slander of title. Defendants' Motion to Dismiss Plaintiffs' libel and slander of title claims is GRANTED.

## V.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.


So ordered this 21st day of March, 2019.


/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE